SAPPINGTON *v.* SAPPINGTON

No. 42479          December 17, 1962          147 So. 2d 494

*McCraine & Fox,* Houston, for appellant.

*Thos. J. Tubb,* West Point, for appellee.

McELROY, J.

This is an appeal by Millard C. Sappington, M. D., from a decree of the Chancery Court of the First Judicial District of Chickasaw County, Mississippi, holding that the appellant be held in both civil and criminal contempt of court and sentenced to serve ninety days in the county jail.

The bill of complaint stated that on September 16, 1958, the Chancery Court of the First Judicial District of Chickasaw County granted to appellee an absolute divorce from the appellant and custody of their three minor children, and awarded appellee alimony and support money in the sum of $300 monthly and $1,000 as attorney's fee. It further ordered appellant to maintain

and keep in force life insurance with the Modern Woodmen of America Life Insurance Company in the sum of $20,000 with their three children as beneficiaries.

Appellee was appellant's second wife. He had a former wife and children in California and after the appellee divorced him, he married a third wife by whom another child was born to him. The third wife no longer lives with the appellant.

On May 19, 1959, on appellee's petition to cite appellant for contempt for failing to comply with the court's decree, a decree was entered adjudicating appellant guilty of civil contempt and awarding to the appellee a money decree in the sum of $1,497.72, and in a second decree continued appellee's petition for further hearing which was continued from term to term until the March 1962 term of the court.

On August 17, 1961, appellee filed her second petition to have appellant cited and held in both civil and criminal contempt of court in that he wilfully refused to comply with the decree of September 16, 1958, and charged that appellant was in arrears in support money and alimony in the sum of $5,906.

The appellant filed his answer to the last petition on September 11, and his plea was his inability to pay more than he had already paid to the appellee under the decrees.

At a hearing during the September 1961 term, a decree was entered awarding appellee a money decree in the sum of $4,050, and continuing the cause for hearing in vacation or the next term of the court on whether or not appellant was guilty of civil and criminal contempt.

A hearing was had at the March 1962 term of court on a petition filed August 7, 1961, and answered by the appellant. A certified public accountant, introduced as a witness for the appellant, stated that he had made up the appellant's accounts as of August 31, 1961, which showed assets, liabilities and an analysis of appellant's

bank statements. Another statement was filed covering the period from September 1, 1961, to February 28, 1962. These statements were made by the witness primarily from appellant's bank statements, oral information or statements made to the witness by appellant. Between September 1961, and February 1962, the appellant had purchased medical equipment valued at $12,000. The appellant owned two cars but the auditor's report of August 31, 1961, reflected that he owed $1,500 on one of the automobiles, which automobile was wrecked before February 1962, and was declared a total loss. His insurance paid the debt plus an additional $643.

The appellant's affirmative defense was to the effect that the agreed decree entered on September of 1958 was made in good faith and based on the assumption that his income from his profession would continue in the future as it had in the past. He gave the defendant all of his interest in his home and his interest in a corporation known as the Natchez Trace Clinic. He tried to practice his profession in Houston, Mississippi, until October 1960, when his creditors foreclosed and repossessed his X-Ray machine and other medical equipment. He went to Texas to practice but they would not honor his license in that state. He returned to Tupelo, Mississippi, but was unable to break into the medical practice at Tupelo. On March 1961, by the help of his friends, he opened an office and attempted to establish a medical practice at Baileysville, Mississippi, in Calhoun County, in what is known as the Bailey Hospital. This hospital is owned by Senator Bailey, who through his generosity loaned his credit to the appellant to purchase equipment on conditional sales contracts valued at more than $30,-000.

He gave a list of his liabilities, including the contracts and notes he owned, the support and alimony due his wives, what he owed the United States Government for Federal income taxes, taxes due the State of Mis-

sissippi and what he owed on his Woodmen of America Life Insurance policy, which liabilities totaled $68,727.68. From the doctor's testimony he was making payments on the $30,000 or more that he owed for his equipment. He owed $3,200 to the G. M. A. C. for an automobile which was later wrecked. In the final settlement for this wreck the doctor received $643, but this was not reflected in the bank account. He was questioned about this settlement and he stated: "I still have maybe a portion of it in cash." He made a note for $1,363, which he used for living expenses. He stated he had paid approximately $3,500 in six months for food, clothing and shelter because he had established his home completely, which meant buying furnishings for the house, even though he was not living with his wife at the time. During the same six months period he paid $1,600 towards the support of his children and wives. During the period from February 1961, to August 31, 1961, he spent $2,388 on his personal living expenses and paid to his children and wife the sum of $400.

The opinion of the court stated: "It is apparent from the admission in the answer that the decree has not been complied with and the question to be determined by this court is whether or not Dr. Sappington is guilty of criminal contempt of this court.

"The evidence shows here that he had expended for his own personal living expenses and in payment of debts made by one of his former wives, and for equipping his home, a sum in excess of $3,000.00. During the same period of time, he has expended for the support of his wife and children, as required by the original decree, the sum of $1,600.00. The witness stated on the witness stand that he had in his possession the major portion of $643.00 that he received in cash as settlement for a wrecked automobile. Taking the testimony before the court, the money that was available to him and the fact that he has had and says now that he has money on

hand, it is the opinion of the Court that the defendant here is guilty of criminal contempt, and the Court so holds that Dr. Sappington is guilty of criminal contempt.

"It is with regret that I find it necessary to impose a sentence upon him because his medical practice will cease during that period of time and naturally his income will be brought to an end, and as a result neither his wife nor any of his ex-wives or his children by them will receive any pecuniary benefit during the time that he is incarcerated; however, it is the opinion of this Court that because of his flagrant disregard of the orders of this Court, he is guilty of criminal contempt * * *."

The question is, was there evidence before the court sufficient to sustain its finding and adjudication that appellant was guilty of criminal contempt?

From the evidence we might infer that the doctor is a man experienced for many years in the practice of medicine. He must be a man nearing seventy years of age and to take him out of his practice of medicine on the evidence given here would not justify the ends met or attempted to be met by the court. ▇▇ ▇ It is essential to criminal contempt that the party charged shall have been able to comply with the order, disobedience of which is charged, unless his disability is the result of his own wrongful act. ▇▇ ▇ The appellant has the right to pay his necessary living expenses out of his earnings before paying anything on the decree awarding alimony to the appellee, ▇▇ ▇ but he must live economically and whenever he has any money not then required for his living expenses, it is his duty to pay it on the decree, and any failure to do so will be a contempt of court punishable as such. ▇▇ ▇ The court has great powers and a continuous power in contempt cases where he has decreed an order under civil contempt. He might have ordered a bond in this case or he might have required a certain amount to have been paid at a certain time. The court could have, if requested, reduced the amount of payments in

conformity to the doctor's station in life and his reasonable expenses which he must pay in his own behalf.

Since the chancery court's jurisdiction in such matters is continuous, it might be that the chancellor could carry out his expressed feelings in his opinion in this case and not take the doctor entirely out of his practice of his profession but give him another chance at this time in which to continue his practice of medicine and at the same time order him to pay a reasonable amount to his wife and children. Justice is always tempered with mercy and it might appear that mercy in this case is more than the doctor involved. It might be that his children would be greater benefitted by letting the doctor continue in the practice of medicine so he could pay the alimony and support.

Even though the sentence by the court may appear absolute, that is ninety days to serve in the county jail, it might be possible, under the mercy of the court, for the appellant to purge himself and be released for the time being at least from the jail sentence.

The law governing criminal contempt is stated in the case of Evans v. Evans, 9 So. 2d 641, as follows: "Section 367, Code of 1930 (Sec. 1278, Code of 1942), provides that the 'chancellor in vacation * * * shall have power to punish any person for breach of * * * any other order, decree, or process of the court, by fine or imprisonment, or both * * *.' Section 741, Code 1930 (Sec. 1656, Code 1942), provides that '* * * if any * * * person refuse to obey or perform any rules, order, or judgment of the court, such court shall have power to fine and imprison such * * * person * * * until the rule, order, or judgment shall be complied with.' These two sections provide respectively for criminal and for civil or quasi criminal contempts. Order for imprisonment in the former case is for a past and completed act or omission, is punitory and must be suffered; in the latter case the punishment is coercive and the contemnor may discharge

himself by compliance with the terms of the decree violated. The first is to preserve the power and vindicate the dignity of the court; the latter is to compel obedience to its decrees. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 14 A. L. R. 712, Id., 125 Miss. 715, 88 So. 280; Griffith, Chancery Practice, Sec. 666; Amis Divorce and Separation in Mississippi, Sec. 275 sqq.

"* * *

"Regardless of the rule as to the essentials of a prima facie case in civil contempt, mere proof of failure to pay alimony without more is not sufficient to make a case of proof beyond a reasonable doubt of an intent deliberately and contumaciously to defy the power and dignity of the court justifying imprisonment as for criminal contempt. Not only the procedure but the proof must reasonably conform to practice in criminal cases."

The appellant testified that he had no intention, desire or will to wilfully disobey the court's decree, but the facts are that he was in civil contempt in 1959 and in 1961. Between September 1961, and March 1, 1962, he purchased on credit and obligated himself to pay $12,-000 for or on medical equipment, when as of August 31, 1961, he owned fixtures and equipment valued on his books in excess of $18,000; that during the period of September 1961, and February 28, 1962, appellant spent on strictly personal living, food, shelter, etc., $3,494.00, and in addition appellant still had unexpended most of the $643.00 paid him for total loss of one of his two automobiles. At the same time he paid only $1,600.00 toward the support of his children and wives.

In Redding v. Redding, 167 Miss. 780, 150 So. 776, the Court said: "In a case of this character, if he became unable in fact to comply with an alimony decree, the party should with reasonable promptitude make that fact known to the court by a proper petition, and have the alimony decree modified or suspended, and not wait until he has been cited for contempt. This comports

with good order, and is less expensive than to await the citation for contempt and then defend the charge thereby made. And, if he do not take the seasonable course first mentioned, he will, in response to the citation for contempt, be required to make out a clear case of inability—merely to raise doubts about it is not sufficient —this for the reason, among others, that chancellors who have been long on the bench learn that decrees for alimony are notably productive of pretenses of poor health and inability to work, and on citations for contempt they are authorized to scrutinize such excuses in the light of that judicial experience.''

Since the appellant did not file a petition to modify the decrees in this case, we feel that the chancellor was justified in his opinion and the proof supports the charge beyond a reasonable doubt that the appellant wilfully and contumaciously refused to comply with the court's decree for support and alimony to the maximum extent of his ability. The record amply justifies the court's finding that the appellant was guilty of criminal contempt, even though more merciful orders could have been entered in the case and he would have been justified in entering them.

The case is therefore affirmed and remanded to the chancellor to enter any kind of decree in good conscience and as equity dictates which he has the jurisdiction to do in divorce and alimony cases.

Affirmed and remanded.

*Lee, P. J., and Kyle, Gillespie and Jones, JJ., concur.*