972 So.2d 48 (2008)
Kelli Ann DORSEY, Appellant
v.
Billy Wayne DORSEY, Appellee.
No. 2006-CA-00328-COA.
Court of Appeals of Mississippi.
January 8, 2008.
*50 John W. Christopher, attorney for appellant.
John Robert White, Ridgeland, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
MYERS, P.J., for the Court.
¶ 1. Kelli Dorsey seeks review of the chancellor's findings, claiming the chancellor committed manifest error, first, in determining that the business, Engineered Systems, Inc. (ESI), and a five-acre parcel of land, Lot Six, were Billy Dorsey's separate property and did not qualify as marital assets. Second, Kelli claims that the chancellor committed manifest error in her division of marital assets. Next, Kelli requests review of the chancellor's denial of her request for alimony. Finally, Kelli asserts on appeal that the chancellor incorrectly denied her request for attorney's fees and costs incurred during trial. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Billy Wayne Dorsey and Kelli Ann Dorsey were married on March 22, 1986. There were three children born of the marriage: Daniel Scott Dorsey, born September 26, 1985, Shawn Christopher Dorsey, born June 16, 1987, and Sarah Nicole Dorsey, born November 17, 1993. Kelli was employed at both Valley Bank and at ESI before returning to school and obtaining her nursing degree. Billy took over ESI from his father and is the present owner of ESI. The parties separated on June 29, 2004, and Kelli was granted a divorce on October 10, 2005, on the grounds of Billy's habitual drunkenness.
¶ 3. The chancellor determined in her findings that neither Billy's company, ESI, nor the five-acre plot of land donated to him by his family transmuted into marital property. The chancellor further denied Kelli's request for alimony and her request for attorney's fees and expenses incurred during trial.
¶ 4. Following the trial, Kelli filed a motion for new trial or, in the alternative, a motion for amendment of the judgment on October 20, 2005. Kelli, aggrieved with the chancellor's findings, timely filed this appeal.

STANDARD OF REVIEW
¶ 5. "When [an appellate court] reviews a chancellor's decision in a case *51 involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule." Yelverton v. Yelverton, 961 So.2d 19, 24(¶ 6) (Miss.2007) (citing R.K. v. J.K., 946 So.2d 764, 772(¶ 17) (Miss.2007)). Therefore, we will "not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or a clearly erroneous standard was applied." Yelverton, 961 So.2d at 24(¶ 6). With regard to matters dealing with divorce, custody, and child support, we will "respect a chancellor's findings of fact which are supported by credible evidence and not manifestly wrong." R.K., 946 So.2d at 772(¶ 17). Further, with regard to the standard of review used when looking at a chancellor's division of property and assets, a "chancellor's division and distribution will be upheld if it is supported by substantial credible evidence." Owen v. Owen, 928 So.2d 156, 160(¶ 10) (Miss.2006). "The award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995) (citing Adams v. Adams, 591 So.2d 431, 435 (Miss.1991)). Further, neither party is entitled to fees unless the requesting party "has established the inability to pay." Creekmore, 651 So.2d at 520 (citing Dunn v. Dunn, 609 So.2d 1277, 1287 (Miss.1992)).

DISCUSSION
I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN THE DIVISION OF MARITAL ASSETS, SPECIFICALLY, CLASSIFYING ENGINEERED SYSTEMS, INC., AND THE FIVE ACRE PARCEL OF LAND AS SEPARATE PROPERTY.
¶ 6. First, Kelli asks this Court to review whether the chancellor's determination that both ESI and the five-acre parcel of land were Billy's separate property was manifestly erroneous. Billy argues that the chancellor did not commit manifest error and her determination was proper. This Court is asked to consider whether the chancellor committed manifest error in determining that neither the business nor the land lost its identity as Billy's separate property and became marital assets by transmutation.
¶ 7. Kelli argues in her appeal that both ESI and Lot Six were used in such a manner that caused them to lose their identity as Billy's separate property and instead became commingled, transforming into marital assets. Kelli contends that she contributed to ESI by performing clerical and bookkeeping services, which in turn caused ESI to become a marital asset. Kelli further explains she was not compensated by ESI during the nine-year period of time she worked at both ESI and Valley Bank, her previous employer. Kelli further argues that her personal funds were used to pay for ESI's expenses and debts, as well as taxes on the Lot Six property. Kelli argues with regard to Lot Six that the entire family used and maintained the land, which converted it into a marital asset. Kelli asserts this evidence established that ESI and Lot Six were used for domestic purposes and as such became marital assets.
¶ 8. The facts are undisputed that ESI was given solely to Billy by his father, Jackie Dorsey. Billy argues that this company was, at all times, his separate property and never became part of the marital assets. Further, a five-acre parcel of land, Lot Six, was also given solely to Billy by Engineered Environmental Equipment, Inc., which was owned by his brothers. Billy argues that this, too, is his separate *52 property and the chancellor was correct in her decision awarding the property to him. Billy argues that the record and case law support the chancellor's determination that both ESI and Lot Six remained Billy's separate property. Billy argues there was no documentary evidence introduced at trial which established that property taxes for Lot Six were paid out of marital funds. Further, Billy contends that Kelli introduced no testimony concerning the amount of time the family used Lot Six for recreational purposes after it was transferred to Billy. Further, with regard to ESI, Billy argues the chancellor was correct in finding that Kelli failed to show the court that personal and business expenses were so interwoven as to cause ESI to have transmuted into marital property. Further, Billy asserts that the chancellor's determination was correct that his infrequent use of business equipment for personal endeavors did not cause ESI to became a marital asset.
¶ 9. When dividing marital assets, "the chancellor must first classify [the parties'] assets and liabilities as belonging to the marriage, to the husband, or to the wife." Smith v. Smith, 856 So.2d 717, 719(¶ 8) (Miss.Ct.App.2003) (citing Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss. 1994)). The chancellor must then evaluate how to divide the marital assets of the parties using the factors set out in Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).
¶ 10. In the case sub judice, the chancellor properly set out and evaluated the Ferguson factors, and divided the property into marital and separate classifications accordingly. Id. The chancellor found that both Lot Six and ESI qualified as inter vivos gifts under the requirements set out in Hankins v. Hankins, 729 So.2d 1283 (Miss. 1999).
¶ 11. Kelli asserts that ESI stock was transmuted into marital property. However, the chancellor determined that ESI was transferred to Billy by his father in 1996 as an inter vivos gift. The chancellor found that while some personal funds may have been used to pay business debts, those amounts are easily traceable and have not become so commingled as to have become unidentifiable. Further, the chancellor determined that the evidence presented by Kelli was insufficient to convince the court that personal and business expenses were so interwoven as to have caused the stock of ESI to have transmuted into marital property. We agree and affirm accordingly.
¶ 12. Additionally, Lot Six was conveyed to Billy on January 15, 2003, by his brothers. The chancellor found that the land donation met all the requirements of an inter vivos gift under the guidelines in Hankins. Id. Kelli asserted at trial that the property had transmuted into marital property since the children rode across the lot on four wheelers and since marital funds were used to pay the property taxes. However, the chancellor noted that Billy had held title of the property for one year at that time. Further, the chancellor recognized that Kelli offered no proof that marital funds were used to pay the taxes, nor did Kelli offer corroborating testimony establishing the frequency and extent to which the children used the land in question. "When separate property and marital property are mixed to such a degree that the elements cannot be distinguished, i.e., that the separate element cannot be traced, then the entire property is considered marital property: the separate property has transmuted by commingling into marital property." Brock v. Brock, 906 So.2d 879, 888(¶ 50) (Miss.Ct. App.2005). Here, the contributions Kelli may have made by paying one year of *53 property taxes are both minimal and easily traceable. As such, this Court cannot find the chancellor committed manifest error by determining that Lot Six was Billy's separate property.
II. WHETHER THE CHANCELLOR ERRED IN THE DIVISION OF THE MARITAL ASSETS.
¶ 13. Kelli further argues that the chancellor erred in her division of the marital assets. The value of ESI's stock was the marital asset which was in dispute between the parties. Both parties presented experts on the matter. Billy argues that the chancellor was correct in adopting his expert's opinion in calculating the value of Billy's interest in ESI stock. Billy argues that it is within the chancellor's discretion to use his expert's valuation and further that there was sufficient information in the record to support her finding.
¶ 14. Kelli also asks this Court to review whether the chancellor's division of marital assets was proper, particularly with regard to the assignment of value of Billy's company, ESI. We cannot find error in the chancellor's division of marital assets. During trial, both Kelli and Billy presented experts regarding the value of ESI. The chancellor determined in her ruling that Billy's expert, Ms. Turner, had a more accurate and reliable approach for determining the value of ESI. Ms. Turner used the net asset approach, which was approved by our supreme court in Singley v. Singley, 846 So.2d 1004 (Miss.2002). Using the net asset approach, she valued ESI at $25,908. In making her determination, the chancellor found fault with Kelli's expert, Mr. Bivens, who employed an income /market approach. The chancellor found that Bivens's assumption that ESI customers would continue to patronize the business even if Billy left the company was improper. The chancellor noted that Mr. Bivens's income/market approach had been criticized in several subsequent cases, most notably in Watson v. Watson, 882 So.2d 95 (Miss.2004). The chancellor found that Mr. Bivens improperly used goodwill in determining the valuation of ESI. The Mississippi Supreme Court has held in the past that goodwill should not be considered when valuating a business for purposes of dividing marital assets. Yelverton v. Yelverton, 961 So.2d 19, 25(¶ 21) (Miss. 2007). As such, we find no error in the chancellor's findings and accordingly affirm.
III. WHETHER THE CHANCELLOR ERRED IN DENYING KELLI ALIMONY.
¶ 15. Next, Kelli argues that the chancellor committed manifest error in determining that she was not entitled to either lump sum or periodic alimony from Billy. Kelli submits that the chancellor failed to adequately weigh each of the factors as required in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). Kelli further argues that the chancellor failed to address all the Armstrong factors adequately in her ruling.
¶ 16. Billy contends the chancellor correctly determined that Kelli was not entitled to any alimony, either periodic or lump sum. Billy argues that lump sum awards are given in order to equalize disparities between the parties after the marital assets are divided. Billy asserts that because there was no large disparity or inequities between himself or Kelli, after the division of marital assets was complete, then no lump sum or periodic alimony was needed. Further, Billy contends that "the chancellor is not required to analyze each Armstrong factor individually in his opinion, but is required to view the overall combination of the factors as a whole, opting *54 to address individual factors at his discretion." Blalack v. Blalack, 938 So.2d 909, 912(¶ 7) (Miss.Ct.App.2006) (quoting Wells v. Wells, 800 So.2d 1239, 1245(¶ 12) (Miss.Ct.App.2001)).
¶ 17. We likewise cannot find manifest error in the chancellor's denial of Kelli's request for alimony. "If after the equitable distribution of the marital property, both parties have been adequately provided for, then an award of alimony is not appropriate." Tritle v. Tritle, 956 So.2d 369, 380(¶ 41) (Miss.Ct.App.2007). If the chancellor determines that "one party is left with a deficit, then the prospect of alimony should be entertained." Roberson v. Roberson, 949 So.2d 866, 871(¶ 21) (Miss.Ct.App.2007). Kelli points to Billy's improper conduct throughout the marriage and asserts that the chancellor failed to give Billy's conduct sufficient weight in her decision. However, "[i]n considering whether one party should receive alimony, it is within the chancellor's discretion to weigh each party's marital fault." Tritle, 956 So.2d at 381(¶ 47). This determination was clearly within the chancellor's discretion and we cannot find she committed manifest error in her decision. Kelli also argues that the chancellor did not consider all of the Armstrong factors in her ruling and as such, failed to adequately weigh each factor. However:
[w]hen the chancellor fails to address all factors on-the-record, we are not required to remand the case, and should not, so long as all facts are available to us so as to allow an equitable determination to be made. Holcombe v. Holcombe, 813 So.2d 700, 704(¶ 12) (Miss.2002). Thus, a lack of an on-the-record consideration of the Armstrong factors by a chancellor in making his determination of the appropriateness of an alimony award will only be reversed if, after a review of all facts and application of the Armstrong factors, it appears that the chancellor's failure to make findings of fact and corresponding conclusions of law constitutes manifest error.
Roberson, 949 So.2d at 869(¶ 6). There was adequate information in the record in the case at bar. At trial, it was determined through testimony that both parties' income and expenses were relatively equal. The chancellor determined that Kelli's gross monthly salary was $3,813 and Billy's was $4,576.83. Further, the testimony at trial revealed that Kelli could increase her earning potential to $4,730 per month if she were to work a forty hour work week. With regard to health and earning capacity, the chancellor noted that each party was in good health, but she recognized Billy had problems stemming from his alcohol abuse. The chancellor also recognized that either party would suffer a financial deficit if ordered to pay support. The chancellor equally divided both the debts and marital assets and awarded Billy net assets of $63,838.62 and Kelli $65,095. The chancellor additionally found that the child support order and the additional help provided by Billy's parents with regard to Scottie, was sufficient to take care of the minor child. Further, the chancellor gave the marital home and contents to Kelli and required Billy to pay his share of the line of credit on the marital residence. Here, we find there are sufficient facts on the record for this Court to determine that the chancellor did not commit manifest error in her determination denying alimony.
¶ 18. With regard to the chancellor's refusal of a lump sum alimony award, we also find the chancellor did not commit error. Generally, "lump sum alimony is a tool to assist a chancellor in transferring assets to a spouse who has no legal title, but who contributed to the accumulation of property in the marriage." Haney v. Haney, 907 So.2d 948, 952(¶ 17) (Miss.2005). Here, the chancellor specifically *55 found that the marital home, fully paid for, was a gift from Billy's parents to Billy, Kelli, and their children. Additionally, ESI and Lot Six were both given to Billy by his family. The chancellor further determined that Billy's parents provided most of the money for Kelli to obtain her nursing degree during the marriage. Upon obtaining her degree, Kelli has been employed as a registered nurse at Baptist Medical Center in Jackson, Mississippi. Finally, the chancellor determined that her division of the marital assets and debt would have no unfair impact on Kelli since the income from her employment is comparable to that of Billy. We accordingly affirm the chancellor's determination.
IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD KELLI ATTORNEY'S FEES AND COSTS.
¶ 19. Finally, Kelli asserts that the chancellor committed manifest error in failing to award her attorney's fees and costs. Kelli argues that she was required to incur substantial debt in order to prove she was entitled to a divorce based on Billy's habitual drunkenness, which he denied until trial. Kelli submits to this Court that she is financially unable to pay her attorney's fees and is entitled to relief.
¶ 20. Billy argues that attorney's fees and costs should not be awarded unless Kelli is unable to pay. Billy counters that Kelli has failed to establish that she is unable to pay and there exists no great financial disparity between the parties. While Kelli alleges that her fees were paid by a friend, Reese Lincecum, Billy points out that she was unable to produce any information regarding the terms of the loan or any documentation that a loan was made.
¶ 21. With regard to the chancellor's determination that Kelli was not entitled to attorney's fees and costs, we can find no error in the chancellor's denial of her request. A chancellor's decision regarding the award of attorney's fees is given great discretion and will only be disturbed if it is found to be an abuse of discretion or in manifest error. Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995) (citing Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss.1993)). This Court has held in the past that in order for a party to be awarded attorney's fees, they must demonstrate an inability to pay. Kelley v. Kelley, 953 So.2d 1139, 1144(¶ 14) (Miss.Ct.App.2007). In the case sub judice, the chancellor made extensive inquires regarding the financial situation of both parties. In the chancellor's findings, she determined that there was no great disparity in earning capacity between the two parties, and further noted that Kelli could increase her earning potential by working forty hours each week. Additionally, Kelli testified at trial that her attorney bills were up to date and paid at the time of trial. Kelli presented no documentation that she had in fact taken out a loan in order to pay her attorney's fees. The record, therefore, does not reflect a great disparity between the earning capacity of these parties nor does it demonstrate that Kelli is unable to pay her attorney's fees. We cannot find the chancellor committed manifest error in denying Kelli her attorney's fees and costs.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.