GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Paris and Mary Woodfin were granted a divorce on the ground of irreconcilable differences. They agreed to submit certain issues to the chancellor for adjudication. Paris asserts that the chancellor: (1) abused his discretion in finding Paris in contempt, (2) improperly distributed the marital debts and Paris’s retirement assets, (3) failed to apply the correct legal standard in determining periodic alimony, (4) abused his discretion in requiring Paris to provide insurance indefinitely for Mary, (5) awarded child support in a manner not supported by the record and set without reference to guidelines, and (6) erred because the combined awards of spousal and child support are per se unreasonable because they do not allow Paris to maintain a decent standard of living.
 

 FACTS
 

 ¶ 2. Paris and Mary were married on December 10, 1985. They separated on June 24, 2005. They have four children, one daughter and three sons. Two children attend Auburn University, and two children live with Mary.
 

 ¶ 3. When they married, Paris was a high school graduate with a business certificate from a technical college, and Mary had completed one year of college. During the marriage, Paris served in the United States Army until 1994; then he worked as a field engineer and attended Embry-Riddle Aeronautical University for a bachelor’s degree. Mary was primarily a housewife and held a few part-time jobs in the beginning of the marriage.
 

 ¶ 4. At the time of the separation, Paris was a field engineer for Lockheed Martin, and he was pursuing his masters degree from Embry-Riddle; Mary was a part-time sales associate for a clothing store. Paris has chronic pulmonary obstructive disease, high blood pressure, high cholesterol, and a service-related knee injury.
 

 ¶ 5. On August 16, 2005, Paris filed a complaint for divorce based on the ground of habitual cruel and inhuman treatment or, in the alternative, on the ground of irreconcilable differences.
 

 ¶ 6. On March 14, 2007, the parties entered into an Agreed Temporary Order (the “Temporary Order”). In the Temporary Order, the parties agreed to joint legal custody of the children, with Mary having primary physical custody and temporary child support; spousal support was paid to Mary. The order also required each party to pay for one-half of the children’s medical expenses not covered by insurance.
 

 ¶ 7. On July 25, 2007, Mary filed a motion for citation of contempt. Mary claimed Paris had failed to pay child support, spousal support, and his half of the children’s medical bills.
 

 
 *392
 
 ¶8. The hearing for divorce and the motion of contempt was set for November 27, 2007. Prior to the hearing, Paris paid $2,500 of the child support arrearage. At the hearing, the parties agreed to a divorce on the ground of irreconcilable differences. They executed a consent to adjudicate and written stipulation agreement (the “Agreement”). The Agreement included the following provisions: (1) Mary and Paris would have joint legal custody of the children, with Mary having primary physical custody; (2) Paris agreed to pay $1,200 per month in child support, tuition to a four-year college for each child at a state-supported school, and the children’s medical insurance; (3) each party agreed to pay one-half of the children’s non-eov-ered medical costs; (4) they divided some of the personal property; and (5) they agreed that Mary would receive alimony. The parties consented to allow the chancellor to adjudicate the following issues: (1) the amount of periodic alimony, (2) contempt as to temporary support and medical bills, and (3) attorney’s fees for contempt and divorce.
 

 ¶ 9. At the hearing through oral stipulation, Paris and Mary requested that the chancellor also determine the ownership of the couple’s personal property, which was in storage.
 

 ¶ 10. Mary submitted the following medical bills of the children in support of the motion for contempt:
 

 Dameon August 6, 2006 $ 265.23
 
 [1]
 

 Paris August 30,2007 $ 442.86
 

 Aundrea June 26, 2007 $ 430.50
 

 Dameon June 26, 2007 $ 430.50
 

 Dijon June 26,2007 $ 446.25
 

 Paris June 26, 2007 $ 430.50
 

 Total $2,445.84
 

 ¶ 11. On July 21, 2008, the chancellor entered a judgment that awarded Mary a house in Alabama (which had been purchased after the separation with HUD assistance); $700 per month as periodic alimony; $1,200 per month as child support; half of the children’s college expenses for an in-state school; half of Paris’s retirement accounts in the sum of $9,000; and the chancellor ordered Paris to maintain Mary’s medical insurance to the maximum amount allowed under COBRA and to pay the children’s insurance. The chancellor ordered that the medical bills not covered under insurance be split equally between Mary and Paris.
 

 ¶ 12. On the motion for contempt, the chancellor ordered Paris to pay the amount owed under the temporary order which was $1,400. Further, the chancellor found Paris in contempt for not paying the children’s medical bills and gave him sixty days to pay the medical bills. The chancellor ordered Paris to pay Mary’s attorney’s fees of $2,500 for the cost of executing the contempt motion and withholding order. It is from this judgment that Paris now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 13. “This Court will affirm the decision of the chancellor when it is supported by substantial evidence unless the chancellor abused his discretion, the decision was manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard.”
 
 Pool v. Pool,
 
 989 So.2d 920, 923(¶ 9) (Miss.Ct.App.2008).
 

 ANALYSIS
 

 1. Whether the chancellor abused his discretion in finding Paris in contempt of the Temporary Order.
 

 ¶ 14. Paris argues that he did not willfully and deliberately ignore his obligation
 
 *393
 
 to pay support; thus, he was not in contempt. Paris also contends that it was error for the chancellor to find Paris in contempt for not paying the medical bills for the children because Paris and Mary had agreed to divide the costs of the children’s medical bills. Also, Paris claims that one medical bill was incurred prior to the Temporary Order and that Mary should have submitted it prior to the Temporary Order.
 

 ¶ 15. The March 14, 2007, Temporary Order required Paris to pay temporary spousal support and child support, and it ordered Mary and Paris each to pay for one-half of the children’s medical expenses not covered by insurance. By July 2007, Paris was $3,900 behind in support payments. Mary’s motion for citation of contempt sought to recover Paris’s arrearage and his share of the children’s medical bills.
 

 ¶ 16. Civil contempt is the willful refusal of a party to comply with an order, and not the mere inability to pay.
 
 McCardle v. McCardle,
 
 862 So.2d 1290, 1293(¶ 10) (Miss.Ct.App.2004). A payor’s failure to comply with a court order is prima facie evidence of contempt.
 
 Id.
 
 “A party may, however, exonerate the contempt citation on proven grounds of inability to pay.”
 
 Id.
 
 at (¶ 11).
 

 ¶ 17. Since Paris failed to pay Mary the ordered amount of separate maintenance and child support, he had the burden of proving his inability to pay through clear and convincing evidence. He failed to do so. Paris’s Rule 8.05
 
 [2]
 
 financial declaration showed that his gross income is $6,746.37 per month with a net income of $5,146.37 per month. The record indicates that Paris had the funds to pay temporary alimony and temporary child support.
 

 ¶ 18. At the November hearing, Paris testified that he could not comply with the Temporary Order because he owed other debts and because his funds were inadequate to cover the debts and the support payments. Though Paris owed several debts in addition to the child support and maintenance payments, Paris failed to establish with particular evidence his inability to comply with the Temporary Order. Since Paris failed to exonerate himself by proving his inability to pay, the chancellor properly found Paris in contempt of the Temporary Order.
 

 ¶ 19. The chancellor also found Paris in contempt for “not paying the children’s medical bills which were submitted into evidence” at the November 27, 2007, hearing. At issue is: (1) whether Paris should be found in contempt for the entire costs of the medical bills, and (2) whether he should be liable for the medical expense that was incurred on August 2, 2006, prior to the Temporary Order.
 

 ¶ 20. “The purpose of civil contempt is to compel parties to obey orders of the court.”
 
 Bounds v. Bounds,
 
 935 So.2d 407, 410(¶ 8) (Miss.Ct.App.2006) (citing
 
 Jones v. Hargrove,
 
 516 So.2d 1354, 1357 (Miss.1987)). The chancellor held Paris in contempt for not paying all the children’s medical bills that were submitted into evidence, yet the Temporary Order stated that Paris and Mary were to pay one-half of the children’s medical expenses not covered by insurance. We find that the chancellor was in error.
 

 ¶ 21. Because the Temporary Order stated that Paris and Mary were each responsible for one-half of the children’s medical bills not covered by insurance, Paris is only liable for one-half of the children’s medical bills.
 

 
 *394
 
 ¶ 22. Also, Mary submitted a statement evidencing a past-due bill for Dameon that was labeled in big letters, “This is not a bill,” and dated August 2, 2006. Paris claims that he is not liable for this expense because Mary failed to submit it at the January 26, 2007, hearing, which was held prior to the Temporary Order. Mary did not address this issue in her brief.
 

 ¶23. The chancellor did not discuss whether Paris was responsible for the medical bill incurred prior to the Temporary Order. In
 
 Clements v. Young,
 
 481 So.2d 263, 270 (Miss.1985), the supreme court decreased an award of medical expenses that could have been decided at an earlier proceeding. The supreme court held that: “[I]f there was a problem about medical or dental bills prior to [the earlier contempt proceeding], the matter could have and should have been litigated then. The decree.... is res judicata with respect to all claims that were presented or may reasonably have been presented at that time.”
 
 Id.
 

 ¶ 24. The expense was incurred over six months prior to the Temporary Order. Accordingly, Mary should have presented the medical bills at the January 26, 2007, hearing and the March 14, 2007, Temporary Order is res judicata with respect to the claims that should have been presented. Accordingly, we find that Paris is not responsible for the August 6, 2006, medical expense, but he is liable for one-half of the bills incurred since March 14, 2007, which total $1,090.31.
 

 2.
 
 Whether the chancellor improperly distributed the parties’ marital debts and retirement funds.
 

 ¶ 25. Paris next argues that the chancellor erred in the division of marital debts and Paris’s retirement funds. Paris claims that the Agreement contained the parties’ terms for the division of debts and marital property. Mary contends in her brief that the chancellor correctly analyzed the distribution of the marital property under the
 
 Ferguson
 
 factors.
 

 ¶ 26. In the Agreement, Mary agreed to pay the debts owed to Capital One, Wells Fargo, and TBW (mortgage), while Paris agreed to pay the rest of the debts. The parties also stipulated that Mary is “entitled to one-half of Mr. Woodfin’s Boeing DRS retirement/401 (k) [and].... to 15 percent of his Lockheed retirement to date, and that’s computed on six years over the life of the marriage and work divided by one-half of savings, stocks, and bonds.” Accordingly, the only property issue left for the chancellor to determine was the ownership of some personal property in storage.
 

 ¶ 27. However, the chancellor went beyond the matters stipulated when he modified the amount of debt that Mary agreed to pay and the disbursement of Paris’s retirement funds. Instead of assigning Mary the debt regarding Capital One, Wells Fargo, and TBW (mortgage), the chancellor assigned her the “Capital One debt or account; Colorvision; her Wells Fargo account or debt and her car debt and any other outstanding debts, bills or claims that Mary has created after the parties’ separation.” The chancellor further modified their agreement by re-allocating the retirement funds and awarded one-half (½) of Paris’s retirement accounts “at Boeing/DRS and Lockheed Martin.... [and] one-half (½) of Parisfs] ESP or savings plans which had a value of $18,000 so that Mary is entitled to the sum of $9,000.”
 

 ¶ 28. The supreme court historically enforces property agreements. In
 
 East v. East,
 
 493 So.2d 927, 931 (Miss.1986), the supreme court stated:
 

 We have also historically recognized that parties may upon dissolution of their
 
 *395
 
 marriage have a property settlement incorporated in the divorce decree, and such property settlement is not subject to modification. A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.
 

 Absent fraud, duress, or unconscionability, property agreements that divide property are enforced by this Court.
 
 McManus v. Howard,
 
 569 So.2d 1213, 1215 (Miss.1990).
 

 ¶ 29. Here, the chancellor made no finding of fraud, duress, or unconscionability which is required for the chancellor to modify the property agreement. Since the chancellor made no finding of fraud, duress, or unconscionability and the chancellor’s decision is not supported by substantial evidence, we reverse the chancellor’s decision and reinstate the parties’ property agreement.
 

 3. Whether the chancellor erred in 'using the incorrect legal standard and whether he emd in awarding periodic alimony.
 

 ¶ 30. The chancellor awarded Mary $700 per month as periodic alimony. Paris argues that the chancellor erred because: (1) the chancellor used the wrong legal standai’d by not correctly applying the
 
 Armstrong
 
 factors; (2) the award was excessive; and (3) Mary should have been awarded rehabilitative alimony. Because the last two issues overlap, we have combined them.
 

 ¶ 31. Mary claims that the chancellor correctly determined Mary’s alimony award because: (1) the chancellor used the correct legal standard by listing the pertinent
 
 Armstrong
 
 factors; (2) the chancellor’s award was not excessive; and (3) she was entitled to periodic alimony.
 

 ¶ 32. Paris agreed at the November 27th hearing that Mary was entitled to alimony, and both consented to adjudicate the matter as to which type of alimony and the amount. However, Paris argues that rehabilitative alimony is the correct award because Mary is not limited by her lack of education and experience and because his disabilities limit his long-term earning potential.
 

 a. Whether the chancellor used the correct legal standard.
 

 ¶ 33. With any type of alimony award, the chancellor considers the following factors: (1) “[t]he income and expenses of the parties”; (2) “[t]he health and earning capacities of the parties”; (3) “[t]he needs of each party”; (4) “[t]he obligations and assets of each party”; (5) “[t]he length of the marriage”; (6) “[t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care”; (7) “[t]he age of the parties”; (8) “[t]he standard of living of the parties, both during the marriage and at the time of the support determination”; (9) “[t]he tax consequences of the spousal support order”; (10) “[fjault or misconduct”; (11) “[wjasteful dissipation of assets by either party”; or (12) “[a]ny other factor deemed by the court to be ‘just and equitable’ in connection with the setting of spousal support.”
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993).
 

 ¶ 34. “Alimony awards are within a chancellor’s discretion, and we will not reverse an award of alimony on appeal unless the chancellor abused her discretion in her fact-finding or misapplied the law.”
 
 Elliott v. Elliott,
 
 11 So.3d 784, 786(¶7) (Miss.Ct.App.2009). This Court has stated:
 

 
 *396
 
 When the chancellor fails to address all factors on-the-record, we are not required to remand the case, and should not, so long as all facts are available to us so as to allow an equitable determination to be made. Thus, a lack of an on-the-record consideration of the
 
 Armstrong
 
 factors by a chancellor in making his determination of the appropriateness of an alimony award will only be reversed if, after a review of all facts and application of the
 
 Armstrong
 
 factors, it appears that the chancellor’s failure to make findings of fact and corresponding conclusions of law constitutes manifest error.
 

 Goellner v. Goellner,
 
 11 So.3d 1251, 1258(¶ 24) (Miss.Ct.App.2009) (quoting
 
 Dorsey v. Dorsey,
 
 972 So.2d 48, 54(¶ 17) (Miss.Ct.App.2008)) (internal citation omitted).
 

 ¶ 35. Though the chancellor discussed a few
 
 Armstrong
 
 factors in this case, he did not make specific findings of fact. The chancellor discussed three
 
 Armstrong
 
 factors which were: (1) the income and expenses of the parties, (2) the presence or absence of the minor children in the home, and (3) any other factor deemed by the court to be “just and equitable.” Also, the chancellor discussed the tax consequences of the spousal order and the wasteful dissipation of assets by either party in the
 
 Ferguson
 
 analysis. Since the chancellor addressed several of the factors and sufficient facts are available to this Court, we find that there was enough evidence in the record to support the chancellor’s finding. However, in following the holding of the
 
 Dorsey
 
 Court, we will review all the facts and apply the
 
 Armstrong
 
 factors to determine if it appears the chancellor’s findings constitute manifest error.
 
 Dorsey,
 
 972 So.2d at 54(¶ 17).
 

 1. Income and Expenses of the Parties
 

 ¶ 36. The record supports the chancellor’s finding of a disparity in income between Paris and Mary. In 2007, Mary made $9,200 per year working part time as a sales associate, and Paris made $62,235 per year working as a field engineer. Pri- or to the couple’s separation, Mary had not worked for more than ten years. Although Paris contends that Mary is not limited by her lack of education and lack of experience, there is nothing in the record to show that she has any skills that would increase her income.
 

 2. Health and Earning Capacities of the Parties
 

 ¶ 37. Mary suffers from occasional optical migraines and claims to suffer from depression, but there are no records to support that she does suffer from depression. Paris testified that he has chronic pulmonary disease, high blood pressure, diabetes, and high cholesterol. He contends that his life earning capacity is diminished because of these health problems.
 

 3. Needs of Each Party
 

 ¶ 38. It appears from the record that there are no special needs of either of the parties besides the debts listed on each party’s Rule 8.05 financial statement.
 

 I. Obligations and Assets of Each Party
 

 ¶ 39. Paris’s Rule 8.05 financial statement reflects a total monthly income of $6,746.37 and a net monthly pay of $5,146.37 with total living expenses of $2,886.77; and Mary’s Rule 8.05 financial statement reflects a total monthly income of $902 and a net monthly pay of $800 per month with total monthly expenses of $2,792.83.
 

 
 *397
 

 5. Length of Marriage
 

 ¶ 40. At the time of divorce, the couple had been married for twenty-two years.
 

 6. Presence or Absence of Minor Children in the Home
 

 ¶ 41. Paris and Mary had four children during their marriage. Two are in college, and two live with Mary.
 

 7. Age of the Parties
 

 ¶ 42. At the time of divorce, Mary was forty-seven years old, and Paris was forty-four.
 

 8. Standard of Living of the Parties, Both During the Marriage, and at the Time of Separation
 

 ¶ 43. There is not much information in the record concerning the standard of living of the parties prior to the separation for either party. They rented their home, and Paris was able to support the family on his income alone.
 

 ¶ 44. At the time of separation, Paris moved into an apartment, while Mary stayed in their home before she left for Alabama. From December 2005 to March 2006, Mary lived off of FEMA funds, which were given to her after Hurricane Katrina. Mary works part time as a sales associate, and Paris stayed at the same job he had prior to the separation. She now owns a home in Alabama and pays a mortgage, while Paris still rents an apartment. One of the children has quit college for a term to work and to help Mary with their bills.
 

 9. Tax Consequences of the Spousal Support Order
 

 ¶ 45. Neither party has raised any argument concerning their tax obligations. The chancellor found that no evidence was introduced by either party related to this factor.
 

 10. Fault or Misconduct
 

 1146. Although Paris contends that fault should be considered because he alleges that Mary had an affair seventeen years ago that caused the divorce. This Court has found that a spouse who resumes an intimate relationship after learning of the other’s adultery has condoned or forgiven the offense.
 
 Fulton v. Fulton,
 
 918 So.2d 877, 881(¶ 11) (Miss.Ct.App.2006). No matter what happened seventeen years ago, Paris resumed the marriage. Accordingly, Paris is barred from bringing Mary’s affair into the evidence to establish fault as a factor to lower the alimony award.
 

 11. Wasteful Dissipation of Assets by Either Party
 

 ¶ 47. Paris claims that Mary wastefully spent the $15,000 in FEMA funds, but the chancellor found that neither party expended, withdrew, or otherwise disposed of marital assets.
 

 12. Any Other Factor Deemed by the Court to be Just and Equitable in Connection with the Setting of Support
 

 ¶ 48. The record is void of any other relevant evidence in connection with support.
 

 ¶ 49. After considering the twelve factors and the facts in the record, we find that the chancellor was not manifestly wrong, nor did he abuse his discretion when he awarded Mary alimony.
 

 b. Whether the chancellor erred by awarding Mary periodic alimony.
 

 ¶ 50. Paris contends that rehabilitative alimony is the appropriate award because of his poor health and that the
 
 *398
 
 chancellor erred in not allowing Paris to submit more evidence regarding alimony.
 

 ¶ 51. In
 
 Hubbard v. Hubbard,
 
 656 So.2d 124, 130 (Miss.1995), the supreme court explained that rehabilitative alimony “is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.” Periodic alimony is awarded on the basis of need and “automatically terminates at the death of the obligor or the remarriage of the obligee.”
 
 West v. West,
 
 891 So.2d 203, 212(¶ 21) (Miss.2004). In light of our review of the
 
 Armstrong
 
 factors, we find substantial evidence to support the chancellor’s award of periodic alimony.
 

 ¶ 52. Mary had completed one year of college and was working prior to the marriage, but she quit the workforce to become a stay-at-home wife ten years ago. Paris had a business certificate from a technical college. Since they have been married, Paris served in the United States Army and has returned to school and earned his bachelor’s degree.
 

 ¶ 53. Following Hurricane Katrina, Mary and the children moved to Alabama and now have a home there. At the hearing, it was determined through testimony that the parties’ incomes were disproportionate with Paris working as a field engineer and Mary working part time as a sales associate. She currently earns roughly $900 per month and takes home $800 per month as a retail sales associate and has $2,792.83 in total living expenses. Paris makes $6,746.37 per month and takes home $5,146.37 per month as a field engineer and has $2,886.77 in total living expenses. Without periodic alimony, Mary would become destitute. Mary needs periodic alimony to support herself.
 

 ¶54. When comparing the factors to the facts hei'e, the decision to award periodic alimony and the amount of $700 per month to Mary is neither an abuse of discretion nor manifestly erroneous.
 
 See Voda v. Voda,
 
 731 So.2d 1152, 1155(¶ 11) (Miss.1999) (affirming alimony award where chancellor did not delineate all factors but all facts in the record supported the award);
 
 Marsh v. Marsh,
 
 868 So.2d 394, 398(¶ 17) (Miss.Ct.App.2004) (affirming the denial of alimony in the absence of findings of fact). Paris has not presented any evidence of the chancellor’s abuse of discretion, and we have not found any. Thus, this issue is without merit.
 

 A
 
 Whether the chancellor abused his discretion in requiting Pans to provide COBRA insurance for Mary without reference to the cost or specific duration of such coverage.
 

 ¶ 55. The Agreement discussed Paris’s responsibility for Mary’s insurance, which was for Paris to carry Mary through COBRA “as long as it’s available through his employment.” However, the chancellor modified the wording of the Agreement when he ordered Paris to keep Mary on his employer’s medical insurance plan through COBRA “as long as permitted by applicable law.”
 

 ¶ 56. Though Paris contends that the chancellor increased his support obligation, the effect of the Agreement and the judgment are the same. Under COBRA, if an employee loses his job, he still keeps his same plan and pays the same amount under COBRA for eighteen months after his employment ends. 29 U.S.C. § 1162 (2006). Accordingly, “for as long as that’s available through his employment” and “as long as the law allows” would both last up to eighteen months after Paris is unemployed. Since the chancellor did not change the agreement, his order was not an abuse of discretion, and this issue is without merit.
 

 
 *399
 

 5. Whether the amount of child support awarded is unsupported by the record, and the chancellor abused his discretion by setting the award ivithout reference to the child support guidelines.
 

 ¶ 57. Paris contends that the chancellor should have made specific, written findings supporting the child support award pursuant Mississippi Code Annotated section 43-19-101(4) (Rev.2009).
 

 ¶ 58. Paris and Mary agreed to the amount of child support in the Agreement. Mary’s attorney read the Agreement aloud at the hearing. Both parties agreed that:
 

 as far as child support, it will be $1,200 a month. Mr. Woodfin will provide medical insurance for the children, and then one-half the noncovered costs will be paid [by] each of them.... On college, the husband is going to pay for a four-year college for the children at a state-supported school in either Alabama or Mississippi, together with books, fees, tuition, the normal costs of college outlined in the college’s normal book showing what the costs are ... the parents and children should use their best efforts to obtain Pell grants, scholarships, and financial aid for each child for college .... [T]he child support can be reevaluated each time a child reaches the age of 21 or becomes emancipated.
 

 ¶ 59. The chancery court has the authority to modify the provisions of an agreement regarding child support in a divorce action.
 
 Barton v. Barton,
 
 790 So.2d 169, 172(¶10) (Miss.2001). Here, the court ordered Paris to pay $1,200 in child support until all children reach the “age of majority, become self supportive [sic] or until further order of this Court.” Also, Paris “shall maintain medical coverage for the children and pay the full premium for said coverage, as well as one-half the medical bills not covered by the insurance.” The chancellor modified the agreement by ordering Paris to pay only “one-half of college education for the children, while minors under Mississippi law, at a state-supported school in Alabama or Mississippi, including books, fees, tuition, room, and normal costs of tuition.”
 

 ¶ 60. Though the chancellor actually reduced Paris’s responsibility for the children’s college expenses, Paris still asserts that the support award is excessive and is unsupported by the record. “Absent any showing that the final written order [does] not reflect the agreement announced in court, or any identification of a matter cognizable under [Mississippi] Rule 60 [of Civil Procedure] that could lead to setting aside a consent decree after being entered ... the parties [are] bound by their agreement.”
 
 McDonald v. McDonald,
 
 850 So.2d 1182, 1189(¶26) (Miss.Ct.App.2002).
 

 ¶ 61. Here, the parties agreed to the amount of child support in the Agreement which was read in open court. The chancellor merely recited the Agreement and reduced Paris’s contribution to the children’s college expenses by half. Accordingly, Paris is bound to the provisions in the Agreement that the chancellor approved.
 

 ¶ 62. Paris also claims that the chancellor erred by not applying the child support guidelines when determining child support. While Paris is correct that Mississippi Code Annotated section 43-19-101(2) (Rev.2009) requires that a deviation from the guidelines must be supported by specific findings of fact, such findings are not necessary when the child support order is based on the parties’ agreement.
 
 McDonald,
 
 850 So.2d at 1189(¶ 24). Here, Paris and Mary agreed to $1,200 per month in child support. Thus, the chancellor did not need to state the specific
 
 *400
 
 findings of fact to support the award. Accordingly, this issue has no merit.
 

 6. Whether the combined awards of spousal support and child support are per se unreasonable because they fail to allow Paris to maintain a decent standard of living.
 

 ¶ 63. Paris argues that due to the combined awards, his expenses exceed his income leaving him in hopeless, continuous contempt of court. Paris cites
 
 Yelverton v. Yelverton,
 
 961 So.2d 19 (Miss.2007), as support for his argument. However, in
 
 Yelverton
 
 the chancellor ordered the husband to pay $10,000 per month from his $12,000 monthly income.
 
 Id.
 
 at 28(1116). The supreme court found the award per se unreasonable as it gave the wife “approximately $12,185.65 a month, although her monthly expenses totaled only $6,000, and [it left the husband] with a negative balance of $4,429 per month.”
 
 Id.
 
 at (¶ 18).
 

 ¶ 64. This case is nothing like the case of
 
 Yelverton.
 
 Here, Paris makes $6,746.37 and has a net monthly pay of $5,146.37. If he pays the agreed $1,200 in monthly child support and the chancellor-awarded alimony at $700 per month, Paris is left with a balance of $3,246.37. Further, Paris’s argument that the combined awards are unreasonable is weakened by this Court’s decision to reduce the chancellor’s award of medical bills, retirement benefits, and marital debts. The party subjected to alimony and .support payments must live economically and make the ordered payments.
 
 Sappington v. Sappington,
 
 245 Miss. 260, 266, 147 So.2d 494, 497 (1962). Paris should be able to live economically and make his support payments. Therefore, this issue is without merit.
 

 ¶ 65. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Although the August 6, 2006, statement submitted by Mary is labeled, “This is not a bill,” and the chancellor did not discuss this statement specifically, we will address the issue as a medical expense because the chancellor neither addressed the total amount owed nor which expenses were included from the statements submitted.
 

 [2]
 

 . Mississippi Uniform Chancery Court Rule 8.05.