816 So.2d 417 (2002)
Delia Ruth THOMPSON, Appellant
v.
M.E. THOMPSON, Jr., Appellee.
No. 2000-CA-02094-COA.
Court of Appeals of Mississippi.
April 16, 2002.
*418 Gary L. Roberts, Gautier, attorney for appellant.
Charliene Roemer, Biloxi, attorney for appellee.
Before KING, P.J., THOMAS, and MYERS, JJ.
KING, P.J., for the Court.
¶ 1. M.E. Thompson and Delia Ruth Thompson were married in April 1951 and lived together until they separated in 1993 when Mrs. Thompson filed for divorce. After a hearing on her request for temporary support, a temporary support order was entered. Six years later, on the day the divorce was scheduled for trial, the parties executed and filed a consent to divorce on the grounds of irreconcilable differences in which they agreed to a divorce and division of disputed property and submitted eleven issues for the chancellor to resolve. Subsequent to the trial, the chancellor entered a very detailed "Findings Of Fact, Conclusions Of Law And Judgment." Mrs. Thompson filed a motion for reconsideration, which was denied. Thereafter, she perfected this appeal and has cited the following issues as error:
1. The trial court was in error when it adjudicated certain accounts to be non-marital in nature, thereby depriving her of any equitable interest therein.
2. The trial court was manifestly erroneous and abused its discretion in failing to award her periodic alimony.
Finding no reversible error, this Court affirms.

FACTS
¶ 2. Mrs. Thompson argues that two investment accounts maintained with Edward Jones should have been equitably divided. One account is solely in the name of Mr. Thompson and the other one is in the name of Mr. Thompson and the parties' daughter, Pamela Ruth Cumbest, as joint tenants with rights of survivorship. Mr. Thompson testified that the joint account was originally opened at JB Oxford & Company in August 1996 with an initial investment of $6,000. His purpose in opening this account was to provide Pamela with a gift equivalent in value to gifts given to the parties' other children. Mr. Thompson explained that he gave Mrs. Thompson one-half of the dividends from his investment in Creekwood Estates and used the remainder to open this account. The value of the account at the time of trial was approximately $20,000.
¶ 3. The investment account titled solely in the name of Mr. Thompson, payable on death to Pamela Ruth Cumbest, had an approximate value of $55,000 at the time of the trial. Mr. Thompson testified that the source of deposits in that account was also Creekwood Estates dividends which had *419 been divided with Ruth and money saved from his salary.
¶ 4. Mr. Thompson and his son-in-law, Mark Cumbest, had purchased a tract of land in 1990 which they developed into Creekwood Estates. They operated as partners in the development of the subdivision and the sale of the lots. In addition to his services as real estate broker, Mr. Thompson also provided services as an engineer and surveyor. Both parties testified that dividends received by Mr. Thompson through July 1995 were equally divided between them. Mr. Thompson testified and provided proof that the dividends not divided between the parties were used for the payment of marital obligations and the balance of the mortgage on the real property where his business was located, the down payment for the purchase of the house in which he was living, the payment of the mortgage on his home, the payment of the balances due on loans for Mrs. Thompson's car and vehicles Mr. Thompson used in his business. As a result, by the time of trial, the parties had no debts.
¶ 5. Mrs. Thompson was sixty-eight years old at the time of the trial and not able to work. Mr. Thompson was sixty-nine and no longer able to perform survey work. He had a heart attack in 1992, was a diabetic, had angioplasty a few years earlier, suffered from high blood pressure, had a knee replacement operation in the fall of 1999, and took twenty-three pills a day. While he could no longer perform survey work, Mr. Thompson continued to perform other duties for Creekwood Estates.

ANALYSIS OF ISSUES

1. Did the trial court err in adjudicating certain accounts to be non-marital in nature?
¶ 6. This Court's standard of review in domestic relations matters is limited. We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Turpin v. Turpin, 699 So.2d 560, 564 (Miss.1997). This Court can find nothing manifestly wrong or clearly erroneous in the chancellor's findings with regard to these accounts. Mrs. Thompson concedes that she received an equitable division of these assets when the dividends were paid. It would be manifestly wrong and clearly erroneous to require Mr. Thompson to further divide the proceeds of these accounts simply because he exercised sound economic judgment in managing these funds. The chancellor is affirmed on this issue.

2. Did the trial court manifestly err and abuse its discretion in failing to award Ruth periodic alimony?
¶ 7. Mrs. Thompson argues that the chancellor failed to properly apply the factors enumerated in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), in that he did not specifically apply each one of the twelve Armstrong factors to the specific facts in her case when he determined that she was not entitled to periodic alimony. She asked the chancellor to require Mr. Thompson to pay her the sum of at least $2000 per month plus the $260.41, which she believed would be the monthly cost of her Medicare supplemental insurance. The chancellor found her request unrealistic in light of Mr. Thompson's greatly reduced future earning potential.
¶ 8. In his findings of fact, conclusions of law and judgment, the chancellor specifically stated that the factors to be considered by the court in awarding alimony were the twelve factors set forth in Parsons v. Parsons, 678 So.2d 701, 703 (Miss. 1996), which cites to Armstrong and sets *420 forth the identical factors. The chancellor concluded that after "considering many factors but most relevant, the length of marriage; the disparity of the separate estates; Mr. Thompson's undivided interest in his business; and the disparity in the vehicles, the Plaintiff should be awarded the amount of $25,000.00 in lump sum alimony. Mr. Thompson may pay that amount within 30 days, or if he chooses, he may pay it in monthly installments of no less than $500.00, however should he decide to pay in monthly installments, interest in the amount of 8.5% per annum shall accrue on the unpaid balance until paid in full."
¶ 9. The Mississippi Supreme Court has said that while an on-the-record analysis of the factors set out in Armstrong is helpful for appellate review, the lack of that analysis in the record does not always warrant reversal, which will be required only in the case of manifest error. Godwin v. Godwin, 758 So.2d 384, 387 (¶¶ 10-11) (Miss.1999). Even though the chancellor in the case at bar did not conduct an on-the-record analysis, there is ample evidence in the record that he examined the evidence in accordance with the relevant Armstrong factors. Further, the chancellor did conduct an on-the-record application of the factors for determining that lump sum alimony was appropriate as required by Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). In so doing he determined that neither party would be able to live as well separately as they were able to live together and that Mr. Thompson's greatly reduced earning potential would not allow for the amount of periodic alimony Mrs. Thompson requested.
¶ 10. The amount and type of alimony to be awarded are matters primarily committed to the chancellor's discretion because of his opportunity to evaluate the equities of the particular situation. Tilley v. Tilley, 610 So.2d 348, 352 (Miss.1992). Finding no abuse of discretion, the chancellor is affirmed on this issue.
¶ 11. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.