949 So.2d 866 (2007)
Thomas L. ROBERSON, Appellant
v.
Jerry Darlene ROBERSON, Appellee.
No. 2005-CA-01402-COA.
Court of Appeals of Mississippi.
February 20, 2007.
*867 Henry Palmer, attorney for appellant.
William B. Jacob, Joseph A. Kieronski, Daniel P. Self, Meridian, attorneys for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. The appellant's motion for rehearing is denied. The original opinion is withdrawn and this opinion is substituted therefor.
¶ 2. Thomas and Jerry Roberson were married in Lauderdale County in August of 1975. The parties had two children born of the marriage, both of whom were emancipated at the time of trial. They lived in various residences within Lauderdale County until 1982, when they became home owners of what the parties affectionately call "the old house." The old house *868 was owned by Thomas's father at the time of the marriage, but was deeded to Thomas in 1982, in exchange for a house trailer. In 1985, the parties moved to Kemper County so Thomas could manage a private hunting reserve owned by Magnolia Steel. As part of the benefits of his new position, Magnolia Steel furnished the parties a house on the reserve. Thomas and Jerry lived there until their separation in 1998. After their separation, Jerry moved to Noxubee County to live at her mother's house. Shortly after this, Thomas moved back to the old house.
¶ 3. On July 13, 2001, Jerry filed her complaint for divorce in the Kemper County Chancery Court on the grounds of irreconcilable differences, habitual cruel and inhuman treatment, adultery, and desertion. After the initial rounds of discovery, both parties filed their joint consent for divorce on November 5, 2002, on the sole ground of irreconcilable differences. Within the consent for divorce, the parties agreed to a division of the majority of their assets and stipulated that Thomas would receive most of the marital property, and placed before the court certain remaining issues, to include alimony, whether Jerry would have an equitable interest in the old house, and what the specific equitable division of their property would be.
¶ 4. After a trial on said issues in the Chancery Court of Kemper County, the lower court issued its final judgment of divorce on June 29, 2005. In the judgment, the chancellor granted the parties a divorce on the ground of irreconcilable differences; ordered that Jerry was the exclusive owner of an 8.6 acre vacant parcel in Noxubee County; ordered that Thomas was the exclusive owner of all other marital property, to include the old house; ordered Thomas to pay Jerry $27,200, which represented her share of the marital property in regards to the chancellor's equitable division; and awarded Jerry periodic alimony in the amount of $375 per month. Aggrieved, Thomas appeals asserting the following issues, which we state verbatim:
(1) The Chancellor was in error in awarding periodic alimony based on Thomas Roberson's unemployment and that his only income amounted to unemployment compensation of $880.00 [sic] per month at the time of trial.
(2) The Chancellor was in error in awarding periodic alimony without an on the record consideration of the "Armstrong" factors.
Finding no error, we affirm.

STANDARD OF REVIEW
¶ 5. When reviewing a chancellor's grant of divorce, this Court must view the facts of the decree in a light most favorable to the appellee and may disturb the chancellor's decision only if this Court finds that it was manifestly wrong or unsupported by substantial evidence. Davis v. Davis, 832 So.2d 492, 495 (¶ 10) (Miss. 2002). Furthermore, an award of alimony is left to the discretion of the chancellor and will not be overturned unless granting alimony constitutes manifest error or the chancellor abused his discretion. Voda v. Voda, 731 So.2d 1152, 1154 (¶ 7) (Miss. 1999).

DISCUSSION
I. DID THE CHANCELLOR MAKE AN ON-THE-RECORD REVIEW OF THE ARMSTRONG FACTORS BEFORE AWARDING ALIMONY?
¶ 6. When considering an award of alimony, the chancellor is to consider the following factors: income and expenses of the parties; health and earning capacities of the parties; needs of each party; obligations and assets of each party; *869 length of the marriage; presence or absence of minor children in the home; age of the parties; standard of living of the parties during the marriage and at support determination; tax consequences of the spousal support order; fault or misconduct; wasteful dissipation of assets by either party; and any other equitable factors. Holley v. Holley, 892 So.2d 183, 185 (¶ 6) (Miss.2004) (citing Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993)). When an award of alimony is appealed, we presume the chancellor considered all factors in making his decision. Holcombe v. Holcombe, 813 So.2d 700, 704 (¶ 12) (Miss. 2002). When the chancellor fails to address all factors on-the-record, we are not required to remand the case, and should not, so long as all facts are available to us so as to allow an equitable determination to be made. Id. Thus, a lack of an on-the-record consideration of the Armstrong factors by a chancellor in making his determination of the appropriateness of an alimony award will only be reversed if, after a review of all facts and application of the Armstrong factors, it appears that the chancellor's failure to make findings of fact and corresponding conclusions of law constitutes manifest error. See Godwin v. Godwin, 758 So.2d 384, 387 (¶ 11) (Miss. 1999) (quoting Selman v. Selman, 722 So.2d 547, 554 (¶ 30) (Miss.1998)); see also Thompson v. Thompson, 816 So.2d 417, 420 (¶ 9) (Miss.Ct.App.2002).[1] Given this legal framework, Thomas's first issue would only have merit if the record lacked those facts that would allow this Court to determine if Jerry's award of alimony was inequitable. After a close and thorough review of the record before us, we find that this is not the case. A discussion of the Armstrong factors as they apply to the facts of this case is warranted.
1. Income and expenses of the parties.
¶ 7. Thomas testified that his income at the time of the trial was $840 per month, which represented his unemployment benefits, giving him a net monthly income of $756. His most recent 8.05 financial statement listed his monthly expenses at $1,707.56. Jerry's 8.05 financial statement indicates that her net monthly income at the time of trial was $1,057.50, while her monthly expenses amounted to $1,054.29.
2. Health and earning capacities of the parties
¶ 8. Thomas testified that he was in good health and there was no indication in the record that Jerry had any adverse health concerns. Thomas completed high school, but there was no testimony as to the extent of Jerry's education. Jerry did testify that she has worked in the food services industry as a cook and cashier for the past eleven years. Though he was unemployed at the time of trial, Thomas testified that he had an earning capacity of thirty thousand dollars and had always been able to find a job in the past. Additionally, testimony indicated that Thomas was a skilled carpenter and tradesman.
3. Needs of each party
¶ 9. Other than the financial needs each party identified on their respective 8.05 financial statements, no special needs are apparent.
*870 4. Obligations and assets of each party.
¶ 10. The Roberson's assets at the time of the trial included: 8.6 acres of undeveloped land, the old house, a 1994 Ford Explorer, a 1965 Ford Mustang, a 1999 Chevy PU, a 1997 Ford Ranger, a trailer, a flat bed trailer, a Ford PU, ten head of cattle, a Ballarus tractor, a portable saw mill, four horses, a stock combo trailer, a 4-wheeler, and several guns. Though some of the assets listed above were exempted from consideration towards the parties' marital assets, the remaining assets were valued by the lower court at $69,900. The lower court divided these assets equitably, as detailed above.
¶ 11. Jerry's liabilities included a credit card account with a then current balance of $1,700, and a personal loan from her mother in the amount of $444. Thomas's liabilities included two credit card accounts totaling $585.50. Liability for these amounts remained with Jerry or Thomas, respectively.
5. Length of the marriage
¶ 12. The parties were married for over twenty-nine years.
6. Presence or absence of minor children in the home.
¶ 13. The parties' children were emancipated at the time of the trial.
7. Age of the parties
¶ 14. At the time of the trial, Thomas was fifty-three years old and Jerry was fifty years old.
8. Standard of living of the parties during marriage and at support determination
¶ 15. The parties maintained a middle-class standard of living.
9. Tax consequences of the spousal support order
¶ 16. Both parties would be responsible for their tax obligations, and Jerry's taxable income would be increased by the amount of the alimony award, namely $375 per month, or $4,500 for the year.
10. Fault or misconduct
¶ 17. The parties were granted a divorce on the ground of irreconcilable differences.
11. Wasteful dissipation of assets by either party
¶ 18. There was no testimony or other evidence to suggest waste on the part of either party.
12. Other equitable factors
¶ 19. The record suggests no other relevant factors for consideration.
¶ 20. At the close of trial, Thomas was awarded virtually all marital property, to include the parties' former home. Jerry was awarded an 8.6 acre parcel in Noxubee County. This division was agreed upon by Thomas and Jerry. Once the chancellor valued all marital property, he arrived at a total value of $69,900. This left a deficit for Jerry which was resolved by a judgment in the amount of $27,200 for Jerry. Considering the factors discussed above, to include the length of the marriage, the disparity in earning capacities of the parties, Jerry's age, and her work experience and prospects, as well as the fact that, as a result of the divorce, she has no home of her own and will be forced to live within, and at the mercy of, her parent's generosity, we find that the chancellor neither abused his discretion nor committed error in awarding Jerry monthly alimony without an on the record consideration of the Armstrong factors.
*871 II. DID THE CHANCELLOR ERR IN AWARDING JERRY ALIMONY WHEN, AT THE TIME OF TRIAL, THOMAS'S ONLY INCOME WAS UNEMPLOYMENT COMPENSATION OF $840 PER MONTH?
¶ 21. If, after an equitable distribution of all marital property, and giving consideration to each party's non-marital assets, one party is left with a deficit, then the prospect of alimony should be entertained. Kilpatrick v. Kilpatrick, 732 So.2d 876, 880 (¶ 16) (Miss.1999). This equitable distribution of marital property does not mandate an equal division. Voda, 731 So.2d at 1157 (¶ 28). When considering alimony, the amount "is largely left to the sole discretion of the chancellor." Johnson v. Johnson, 877 So.2d 485, 495 (¶ 43) (Miss.Ct.App.2003). The chancellor's discretion notwithstanding, alimony "should be reasonable in amount commiserate with the [payee's] accustomed standard of living minus [the payee's] own resources, and considering the ability of [the payor] to pay." Id. (quoting Gray v. Gray, 562 So.2d 79, 83 (Miss.1990)).
¶ 22. We find it interesting to note that at the time of trial Thomas's attorney commented that Thomas expected to have a job in September and advocated an increase in his monthly obligation to spread out the $27,200 award. Specifically, Thomas's attorney stated,
[B]ut we would be willing to commit, you know, [Thomas] feels good about that, be willing to commit to, say, add three hundred dollars to the alimony award of three seventy-five to make it a total of six seventy-five, I'll even say seven hundred dollars even, to begin September 1st . . . I think he doesn't have a job, anticipates one, and what he thinks he may be making, he would commit to obligate himself to seven hundred dollars per month beginning September the 1st. That would be three hundred and seventy-five towards your alimony award, and then three hundred and twenty-five towards the equitable division you've given.
¶ 23. While the marital division was numerically equal, in awarding periodic alimony the chancellor obviously decided that Jerry was left with an equitable deficit. After reviewing the record in light of Armstrong, we agree. The $375 per month award is not excessive and will assist Jerry in maintaining the standard of living she was accustomed to during the parties' long marriage. Also, in this instance, the fact that Thomas was unemployed at the time of the trial is of no consequence. The record indicates that Thomas never had any problem finding employment, and was able to move from job to job with relative ease. Thomas testified that he was a skilled carpenter and had always been able to find a job in the past, even working for himself at one point after the parties separated. Given the facts in the record, we find that the lower court did not abuse its discretion in either awarding alimony in the amount of $375 per month or evaluating Thomas's "ability to pay" the alimony.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] While reversal is not required based solely on the lack of an on-the-record consideration of the Armstrong factors, the Godwin court did identify the difficulties such a failure creates for this Court in reviewing the appropriateness of an award of alimony. See Godwin, 758 So.2d at 387 (¶ 11). When a lower court fails to utilize those factors which our supreme court laid out in Armstrong, it amounts to a disservice to this Court and the parties involved.