# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CT-01909-SCT

*PERRY L. COLLINS*

*v.*

*IRETHA F. COLLINS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2010 |
| TRIAL JUDGE: | HON. MARIE WILSON |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ARNOLD DATRON LEE |
| ATTORNEY FOR APPELLEE: | PHILIP MANSOUR, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART AND REMANDED - 05/09/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     After filing for a no-fault divorce in Washington County Chancery Court, Perry and

Iretha Collins asked the court to decide the questions of alimony, child support, attorney's

fees, and the division of marital assets. Dissatisfied with the chancellor's decision, Perry

appealed to the Court of Appeals, which affirmed the judgment of the trial court. Perry then

petitioned the Court for certiorari and presented four issues; we granted certiorari to consider

two issues: (1) the calculation of Perry's gross income for purposes of determining child

support and (2) the designation of marital property. Finding that the Court of Appeals erred in affirming the trial court's decision regarding both issues, we affirm in part and reverse and remand in part.

## FACTS

¶2. Perry and Iretha Collins were married in 1991 and filed for divorce in 2005. The marriage produced a daughter, Jermylia. During the course of the marriage, the Collinses owned and operated three businesses: (1) Collins Realty, which owned and operated eight rental units; (2) Collins Heating and Air, run by Perry; and (3) Abundance of Life child care center, run by Iretha. After their separation in 2006, Iretha and Jermylia moved into an apartment, and Perry maintained possession of the marital home. Although the couple amicably divided their personalty and agreed upon a custodial arrangement for Jermylia, the Collinses submitted four questions for the chancellor to consider: (1) division of marital assets and debts, (2) alimony, (3) child support, and (4) attorney's fees.

¶3. The ensuing litigation lasted approximately four years. Perry changed attorneys four times, and although the two seemed to agree on a settlement at one point, the discussions eventually fell apart. Although Perry testified at trial regarding his assets, he admitted that his Rule 8.05 form was incorrect and contained omissions. Perry also failed to provide the court with any tax returns because, as he admitted, he failed to file returns for the two years prior to trial.

¶4. At the conclusion of the trial, the chancellor awarded the marital home and building used for the heating and air conditioning business to Perry and awarded the building used for the daycare, the rental units, and a portion of Perry's annuity to Iretha. The court further

2

ordered that Perry pay Iretha $1,300 per month in child support. The court did not award any alimony or attorneys' fees to either party.

¶5.    Perry appealed the court's decision claiming the chancellor erred in her calculation both of Perry's adjusted gross income for determining child support payments and the proper designation of property. The Court of Appeals affirmed all of the findings of the chancellor except for one component of her income computation related to income from rental properties awarded to Iretha as part of the Final Judgment. The Court of Appeals, however, found this error harmless.

¶6.    The Court of Appeals correctly affirmed the chancellor's judgment as to the questions of the marital debt and the division of the marital property. Accordingly, we grant certiorari as to the first and fourth issues only.

## STANDARD OF REVIEW

¶7.    We give a chancellor's determinations in an irreconcilable differences divorce substantial deference and will not disturb them as long as the findings are "supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous[,] or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (¶ 8) (Miss. 2002) (quoting *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 (¶ 13) (Miss. 1999)).

¶8.    Particularly in the areas of divorce and child support, this Court must respect a chancellor's findings of fact when they are supported by credible evidence and not manifestly wrong. *Wheat v. Wheat*, 37 So. 3d 632, 636 (¶ 11) (Miss. 2010) (citing *R.K. v. J.K.* 946 So.

3

2d 764 (¶ 17) (Miss. 2007)).  Manifest error is that error which is unmistakable, clear, plain, or indisputable.  *Magee v. Magee,* 661 So. 2d 1117, 1122 (Miss. 1995).

## DISCUSSION

### I. Property Classification

¶9.    Regarding the distribution of property, Perry complains that the chancellor did not consider the May 8, 2007, temporary support order to mark the point of demarcation for the purpose of ending the time period during which accrued assets were to be considered marital, rather than separate, property.[1]  Perry contends the chancellor abused her discretion when she made the date of the divorce the point of demarcation instead.  The law in Mississippi is that the date on which assets cease to be marital and become separate assets – what we refer to herein as the point of demarcation – can be "either the date of separation (at the earliest) or the date of divorce (at the latest)."  *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶ 27) (Miss. 2009).

¶10.    In *Selman v. Selman*, 722 So. 2d 547 (Miss. 1998), the wife had a retirement fund, and the chancellor awarded the husband half its value even though the fund did not begin to accrue until after the husband had vacated the marital home.  *Id.* at 553 (¶ 22).  When including the fund in the marital assets, "the chancellor stated only that '[t]he law says that until they are divorced, everything is on the table.'"  *Id.*  Applying the well-settled manifest

---

[1] In his brief, Perry relies on our decision in *Godwin v. Godwin*, 758 So. 2d 384 (Miss. 1999), for the proposition that temporary support orders and separate maintenance orders alike mark the point of demarcation.  However, the *Godwin* Court did not address temporary support orders and held only that separate maintenance orders should effect such a result. *Id.* at 386 (¶¶ 5-7).

error standard of review, *id.* at 551 (¶ 12), the **Selman** Court reversed the chancellor's ruling and wrote, "while the marriage had not legally terminated, the relationship out of which equitable distribution arises had ended some months earlier." **Id.** at 553 (¶ 25).

¶11.	A temporary order *may* be considered by the chancellor to be a line of demarcation between marital and separate property, **Cuccia v. Cuccia**, 90 So. 3d 1228, 1233 (¶ 8) (Miss 2012); *see also* **Wheat v. Wheat**, 37 So. 3d 632, 637-38 (¶¶ 16-18) (Miss. 2010) (recognizing, in *dicta*, that a temporary support order can indicate the demarcation point), but we have never held that it must. However, in **Pittman v. Pittman**, 791 So. 2d 857 (Miss. Ct. App. 2001), the Mississippi Court of Appeals held, "[T]he temporary support order serves the same purposes as a separate maintenance order and that property accumulated thereafter is separate property." **Id.** at 864 (¶ 19). In so writing, the **Pittman** Court created the impression that Mississippi now has established a rule that temporary orders always and in every case provide the mark of demarcation. Temporary support orders vary. They may include issues such as which spouse controls the marital home, automobiles, and bank accounts, or they may simply, as in the case *sub judice*, provide only for temporary custody and support of a minor child. Because of the degree of variance in temporary orders and the particularities of every marital dissolution, we reaffirm our holding in **Lowrey** and hold that it is necessary that a chancellor maintain discretion to decide in each instance whether a temporary order is the proper line of demarcation. To the extent that the **Pittman** opinion can be read to create a rule that a temporary support order necessarily and always indicates the point of demarcation, we overrule it.

5

¶12.    In the case *sub judice*, the chancellor did not explicitly state what date she chose as the date of demarcation, but from the substance of the opinion, it is clear she chose the date of the divorce.  In their briefs, the parties accept that the chancellor used the date of the divorce as the point of demarcation.  The temporary support order in the instant case dealt only with child custody and temporary child support.  It did not go so far toward separating the parties' several jointly-held assets that we would hold the chancellor abused her discretion in not finding it to be the point of demarcation.

¶13.    However, the **Cuccia** Court noted that the chancellor must set out the specific date used as the line of demarcation and remanded the case partly for the chancellor's failure to do so.  **Cuccia**, 90 So. 3d at 1233 (¶ 11).  The chancellor did not do so here, but, as noted above, the parties do not dispute the issue.  We take the instant opportunity to write that had the issue been disputed, or had the chancellor's order been ambiguous as to the demarcation date used, we would have remanded the case as did the **Cuccio** Court.  We reiterate here that chancellors should indicate in the record what date they choose for the point of demarcation and why they choose it.

**II. Child Support Award**

¶14.    Perry asserts that the award of $1,300 per month in child support is manifest error for two reasons: (1) the chancellor arbitrarily determined the assets of Perry's business simply by dividing in half the dollar amount of deposits made in the company's bank account for one year and declared one half to be assets and designated the other as overhead and expenses; (2) the chancellor added Perry's future revenue from the rental properties as part of his gross income after she awarded the rental units to Iretha in the Final Judgment.

6

## A. Business Income

¶15.   During 2009 Perry deposited a total of $188,919.51 into the heating and air conditioning business account.  The chancellor stated that, due to the admittedly incorrect information provided in Perry's 8.05 form, it was difficult to determine his adjusted gross income.  Further, the chancellor found Perry's testimony that the overhead of the business was $300,000 to be "simply not credible."  As a result, the chancellor split the deposited dollar amount in half and declared one half of the deposits ($94,459.75) to be Perry's annual income from the business.  While we agree that the 8.05 form was lacking, the chancellor ignored other evidence regarding the assets of the business.

¶16.   We recognize that the findings of a chancellor in determining child support presents questions of fact that we are loath to disturb, but such disturbance is required when not substantiated by the evidence.  "[A] chancellor's findings of fact will only be reversed when the record possesses no credible evidence to support them."  *Hensarling v. Hensarling*, 824 So. 2d 583, 586 (¶ 7) (Miss. 2002).  The Court of Appeals incorrectly stated that Perry had provided no evidence beyond his 8.05 form to substantiate his claims.  Perry provided to the court the business's bank records for 2009.  These documents, correctly used by the chancellor to determine the amount of deposits made during the year, further show that the cost of supplies, salary, and other overhead resulted in Perry's income from the business being nowhere near the $94,459.75 determined by the chancellor.

¶17.   The chancellor's concern with the document is justified.  In fact, we have stated that failure to comply with Rule 8.05 constitutes a fraud on the court.  *See Trim v. Trim*, 33 So. 3d 471 (Miss. 2010).  However, if the chancellor makes such a finding, the appropriate

7

remedy for such behavior is to hold Perry in contempt and enter appropriate sanctions – not to punish him by disregarding any other credible evidence provided by him to the court. *See* Uniform Chancery Court Rule 8.05 ("The failure to observe this rule, without just cause, shall constitute contempt of Court for which the Court shall impose appropriate sanctions and penalties"). Rule 8.05 allows evidentiary discovery in addition to the disclosure. *Id*. In short, errors or omissions in the form do not preclude consideration of other evidence presented to the chancellor. We therefore find that the chancellor was manifestly wrong when she arbitrarily determined Perry's monthly income to the exclusion of the undisputed evidence he provided.

**B. Rental Property Income**

¶18. A chancellor may determine gross income for child support payments from all sources ". . . that may reasonably be expected to be available to the absent parent . . . ." Miss. Code Ann. § 43-19-101(3)(a) (Rev. 2009). One component of the chancellor's determination of Perry's gross income was future revenue from the rental properties the Collinses owned during their marriage. The chancellor, however, awarded those properties to Iretha in the Final Order. It would therefore be quite impossible for Perry to reasonably expect to be awarded the benefit of rental income stemming from property he no longer owned. The Court of Appeals reached the same conclusion in its opinion, but found the error harmless. *See Collins v. Collins*, No. 2010-CA-01909, 2012 WL 3570380 (Aug. 21, 2012). We concur with the Court of Appeals's determination of error but find that such error is not harmless for reasons discussed below. We find that the chancellor abused her discretion in attributing any future rental income to Perry when he no longer owned the property.

8

## C. Mississippi Code Section 43-19-101

¶19.    Tangential to these two errors in the calculation of Perry's income is the application of Section 43-19-101(4). In pertinent part, the statute requires the court to determine if the guidelines provided in the statute to assist the chancellor in determining gross income are "reasonable" in cases where the adjusted gross income is more than $50,000.[2]  The chancellor found the combination of business income and rental income to equal an annual net income for Perry of $110,216.47. Under the guidelines, his child support payments would be $1,285.85 per month.[3]  Pursuant to Section 43-19-101(4), the chancellor made a written finding that fourteen percent was not reasonable and the amount of support should be rounded up to an even $1,300 per month. If the $50,000 income threshold is not met without the addition of the assumed rental income, then the error as to its inclusion in Perry's income level is not harmless as the Court of Appeals opined. We do not contest the chancellor's findings as to reasonableness on this point, but note that if Perry's adjusted gross income does not surpass $50,000, the subsection will not apply.

## CONCLUSION

¶20.    Although we find no error in the chancellor's division of marital property or debt, we do find that credible evidence related to Perry's heating and air conditioning business was ignored. Additionally, any future revenue from the rental properties awarded to Iretha by

---

[2]We note that the Mississippi Legislature raised this threshold to $100,000 during the 2013 legislative session. However, the $50,000 threshold applies in the instant case since that was the threshold amount at the time the suit was commenced.

[3] The guidelines in Section 43-19-101 provide that support for one child should be fourteen percent of the parent's adjusted gross monthly income. Miss. Code Ann. § 43-19-101(4) (Rev. 2009).

the court's Final Judgment should not have been included in the determination of Perry's adjusted gross income. We further find that these errors rise to the level of abuse of discretion on the part of the chancellor and remand the case for a new calculation of Perry's income. Therefore, the judgment of the trial court is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion. The judgment of the Court of Appeals is likewise affirmed in part and reversed in part.

¶21.    **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.  KING, J., NOT PARTICIPATING.**