## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01797-COA

**BETTY REBECCA RANDOLPH**                                        **APPELLANT**

**v.**

**DANIEL LEE RANDOLPH**                                              **APPELLEE**

DATE OF JUDGMENT:              06/09/2014
TRIAL JUDGE:                   HON. JOSEPH KILGORE
COURT FROM WHICH APPEALED:     KEMPER COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        MARVIN E. WIGGINS JR.
ATTORNEY FOR APPELLEE:         LESLIE C. GATES
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       GRANTED DIVORCE; DIVIDED
                               PROPERTY
DISPOSITION:                   AFFIRMED: 09/06/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. The Kemper County Chancery Court granted Danny Randolph and Rebecca Randolph a divorce on the ground of irreconcilable differences. The chancellor also performed an equitable division of all assets and debts. On appeal, Rebecca argues that the chancellor (1) erred in finding Danny and Rebecca's date of separation as the date of demarcation; (2) erred in dividing the marital assets; and (3) erred in refusing to award her alimony. Finding the judge acted within his sound discretion, we affirm.

### FACTS

¶2. Danny and Rebecca married on December 10, 1995. They had one child together—

Emely, born in 2004. After sixteen years of marriage, Danny and Rebecca separated. On December 12, 2011, Danny filed for divorce against Rebecca on the ground of adultery or, in the alternative, irreconcilable differences. Rebecca counterclaimed, requesting a divorce on the ground of habitual cruel and inhuman treatment; constructive desertion; or, in the alternative, irreconcilable differences.

¶3. On July 16, 2013, and September 17, 2013, the court entered temporary orders on stipulated custody, support, and visitation (except summer).[1] The court awarded Rebecca legal and physical custody of Emely. Danny was on disability due to cancer. The court ruled that the Social Security check payable to Emely based on his disability benefits constituted child support. The court set the remaining contested issues for trial.

¶4. Before trial, Danny and Rebecca consented to a divorce on the ground of irreconcilable differences. The court held trial on March 10 and March 11, 2014, to rule on the equitable division of the marital property and summer visitation. After Danny and Rebecca separated, Danny stayed in the marital home and continued to pay the $780 house note. The chancellor ruled that part of the marital property included a 4.7 acre tract and a 34 acre tract (with the marital homestead being one acre). After conducting his analysis under the *Ferguson*[2] factors, the chancellor awarded Rebecca sixty percent of the marital property and Danny the remaining forty percent. Rebecca was awarded 28 acres, and Danny was

[1] On March 11, 2014, the court ruled the agreed order would remain in affect until further order from the court.

[2] *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994).

2

awarded 6 acres (including the marital home) and the 4.7 acre tract.

¶5. Rebecca filed a Mississippi Rule of Civil Procedure 59 motion and requested that she be awarded the marital home. She further claimed that the chancellor erred in finding the date of separation as the line of demarcation and in refusing to award her alimony. Finally, she sought clarification as to what 28 acres were awarded to her.

¶6. The chancellor denied all of Rebecca's claims except the clarification. He addressed the fact that the marital home's driveway passed through both Danny's and Rebecca's properties. The chancellor recognized that both parties would need to use the driveway to access their respective properties. So the chancellor ordered an easement be granted specifically for use of the driveway. Rebecca appealed.

## STANDARD OF REVIEW

¶7. "This Court employs a limited standard of review of property division and distribution in divorce cases." *Bowen v. Bowen*, 982 So. 2d 385, 393 (¶32) (Miss. 2008) (quoting *Owen v. Owen*, 928 So. 2d 156, 160 (¶10) (Miss. 2006)). The chancellor's distribution of the marital assets will be affirmed as long as "it is supported by substantial credible evidence." *Id*. at 394 (¶32). In addition, "[a]limony awards are within the chancellor's discretion and will not be reversed by the Court on appeal absent manifest error or an abuse of discretion." *Cosentino v. Cosentino*, 912 So. 2d 1130, 1132 (¶8) (Miss. Ct. App. 2005) (citing *Baker v. Baker*, 861 So. 2d 351, 353 (¶10) (Miss. Ct. App. 2003)).

## DISCUSSION

¶8. Mississippi statutory law specifically lays out the procedure for a divorce on the ground of irreconcilable differences. Parties may consent to the divorce and submit to the trial court any unresolved issues:

> If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment.

Miss. Code Ann. § 93-5-2(3) (Rev. 2013). Here, Danny and Rebecca submitted to the court the issues of summer visitation and equitable division of all assets and debts.

### 1. Line of Demarcation

¶9. "The law in Mississippi is that the date on which assets cease to be marital and become separate assets — what we refer to . . . as the point of demarcation — can be 'either the date of separation (at the earliest) or the date of divorce (at the latest).'" *Collins v. Collins*, 112 So. 3d 428, 431-32 (¶9) (Miss. 2013) (quoting *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶27) (Miss. 2009)). A chancellor may consider a temporary order as the line of demarcation between marital and separate property. *Id*. (citation omitted) (citing *Cuccia v. Cuccia*, 90 So. 3d 1228, 1233 (¶8) (Miss. 2012)). Ultimately, however, the chancellor has the discretion to draw the line of demarcation. *Id*. at (¶10) (overruling *Pittman v. Pittman*, 791 So. 2d 857 (Miss. Ct. App. 2001), on its implication that temporary orders always

4

provide the mark for demarcation).

¶10.    The beginning date in calculating the accumulation of marital assets is December 10, 1995—the date of Danny and Rebecca's marriage.  The chancellor found the point of demarcation was November 28, 2011—the approximate day Danny and Rebecca separated.  During the divorce proceedings, no temporary order was entered.  In *Aron v. Aron*, this Court stated that the chancellor "has discretion in determining whether acquisitions made in a marriage's dying stages qualify as marital or separate property."  *Aron v. Aron*, 832 So. 2d 1257, 1259 (¶8) (Miss. Ct. App. 2002).  Here, the chancellor reasoned that neither party provided any monetary support to the other post-separation, except the disability benefits paid on behalf of Emely.  We find the chancellor was well within his discretion to use the couple's separation as the point of demarcation.

### 2.  Equitable Distribution

¶11.    To equitably divide property, the chancellor must: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) equitably divide the marital assets.  *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994); *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).  Marital property is "subject to an equitable distribution by the chancellor."  *Hemsley*, 639 So. 2d at 915.  Further, such marital "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside of the marriage."  *Id*. at 914.  The failure to segregate nonmarital

5

assets means that they "may be converted into marital assets if they are commingled with marital assets or used for familial purposes, absent and agreement to the contrary." *Flechas v. Flechas*, 791 So. 2d 295, 303 (¶27) (Miss. Ct. App. 2001).

¶12.    The chancellor listed and valued the marital property, as well as the parties' separate estates. He found that, in addition to other miscellaneous household items, a 4.7 acre tract, the parties' home, and the surrounding 33 acres were marital property. The parties stipulated that the value of the home was $65,000. At the time of separation, the stipulated payoff was $56,000. Danny had been living in the home since the separation and continued to pay the $780 house note. Danny testified that he had put close to $20,000 into the marital home since the separation and that Rebecca contributed nothing. The chancellor found that Danny and Rebecca's marital assets amounted to $121,498.75 and their debts amounted to $56,000, with a net of $65,498.75.

¶13.    The chancellor then proceeded to an analysis of the *Ferguson* factors. Those factors are:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse

6

accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶14. In 2014, Danny was unemployed and on disability due to his cancer. His net monthly income was $1,576.00 per month and his expenses were $1,314.00 per month, including the house note. He testified that he made more money than Rebecca during their marriage, working jobs ranging from carpenter to maintenance manager.

¶15. While married to Danny, Rebecca received training in the field of occupational safety and health administration. She testified that she expected to graduate in 2014. Danny did

7

not personally contribute to Rebecca's education. She relied on grants and loans and owed $26,000 at the time of trial. After graduation, she hoped to find a job at an oil refinery. Until then, she was working various part-time jobs. Rebecca and Emely were living rent free in Rebecca's mother's single-wide mobile home at the time of trial. Rebecca testified that she could only afford around $400 a month in rent if she moved elsewhere. She listed her net monthly income as $1,757.86 (which included the $788.00 she received in Emely's Social Security). Rebecca listed her expenses at $1,641.67 without the house note. The court emphasized that Rebecca had recently purchased a vehicle for $28,573.08, which she clearly could not afford. Her older vehicle had a lien of $7,683.24, but she only got $7,000 for the trade-in. So she had to pay the seller the difference. The purchase cost for the new vehicle was $37,499.25 after interest, with monthly payments of $499.99.

¶16. The court also addressed how Danny's mistreatment of Rebecca disrupted the family stability. Around the time they separated, Danny pinned Rebecca against the wall and choked her, pointed a gun at her, and dragged her through the house. He also put kerosene on her and threatened to set her on fire. Danny was arrested and later convicted of simple assault.

¶17. The chancellor ultimately awarded Rebecca sixty percent of the marital assets and none of the marital debt, stating:

> After considering that Rebecca will have physical custody of Emely, Rebecca's significant separate debt and her dire financial situation, as well as the harsh treatment toward her by Danny, while also still giving consideration to Danny's significant contribution to the accumulation of marital assets and

8

his health issues, the court finds that the equitable distribution should be accomplished by Rebecca having 60% and Danny having 40% of the marital assets.

Specifically, the chancellor awarded Rebecca 28 acres of the 34 acre tract (valued at $35,000). Danny was awarded the 4.7 acre tract (valued at $5,875), the marital home, as well as the remaining 5 acres of the 34 acre tract (valued at $6,500).

¶18.    Reversal is warranted "only where the failure to make sufficient findings of fact and conclusions of law constitute[s] manifest error." *Selman v. Selman*, 722 So. 2d 547, 554 (¶29) (Miss. 1998). In this case, the chancellor set out his considerations in classifying the contested items as marital property under *Hemsley* and conducted a detailed analysis of all the *Ferguson* factors in distributing the marital property. We cannot say that the chancellor abused his discretion in doing so. Accordingly, we affirm the judgment of the chancellor.

### 3.  Alimony

¶19.    Rebecca also argues that the court erred by failing to award her alimony. "Alimony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." *Ferguson*, 639 So. 2d at 929. "If the equitable division of property leaves neither spouse with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses, then no alimony award is appropriate." *Jackson v. Jackson*, 114 So. 3d 768, 777 (¶22) (Miss. Ct. App. 2013) (citations omitted). Rebecca was awarded 28 acres of the 34 acre tract (valued at $35,000), as well as a majority of the marital assets. The

9

chancellor's equitable division did not leave Rebecca with a deficit. We agree with the chancellor that alimony was inappropriate.

## CONCLUSION

¶20.   We find that the chancellor acted within his discretion in drawing the line of demarcation, in dividing the marital assets, and in refusing to award Rebecca alimony. Thus, we affirm the chancellor's judgment.

¶21.   **THE JUDGMENT OF THE CHANCERY COURT OF KEMPER COUNTY IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**