# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00016-COA

**ROBERT G. LEWIS**                                                            **APPELLANT**

**v.**

**LISA M. LEWIS**                                                              **APPELLEE**

DATE OF JUDGMENT:              12/16/2021
TRIAL JUDGE:                  HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:    DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       JERRY WESLEY HISAW
ATTORNEY FOR APPELLEE:        ELIZABETH PAIGE WILLIAMS
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 04/25/2023
MOTION FOR REHEARING FILED:

### BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     The DeSoto County Chancery Court granted Lisa Lewis and Robert Lewis an irreconcilable differences divorce, divided the marital estate, and awarded Lisa periodic alimony of $2,000 per month. On appeal, Robert argues that the chancellor abused her discretion in selecting the "line of demarcation" for purposes of dividing the marital estate and in awarding alimony. We find no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Robert and Lisa were married in 1999 and later had two children together. After twenty years of marriage, Robert moved out of the marital home in December 2019 and filed for divorce in January 2020. Lisa later filed an answer denying that Robert was entitled to

a divorce and a counterclaim for separate maintenance. Lisa alleges that Robert had already begun an affair with another woman by the time he left the marital home. At trial, Robert admitted that he had committed adultery and that the affair was still ongoing, but he testified that the affair began shortly after he moved out.

¶3. In December 2020, the chancellor entered a temporary order requiring Robert to pay $1,903 per month in child support and certain other expenses of the parties' children, pay $1,100 per month in temporary alimony, and maintain health insurance for Lisa and the children. The temporary order stated in part, "Out of the money received by [Lisa], she shall have the responsibility for payment of the ongoing house mortgage note, [her] vehicle note, [her] vehicle insurance, all house utilities, and the other expenses and items listed on [her] Rule 8.05 Financial Disclosure."

¶4. Nine days after the temporary order was entered, Robert filed a motion to modify the order because he had lost his job. In February 2021, the chancellor modified the temporary order, reducing Robert's child support payments to $900, reducing his temporary alimony payments to $100 per month, and suspending Robert's obligation to maintain health insurance for Lisa and the children.

¶5. In April 2021, Lisa filed a motion to modify the temporary order because Robert had found a new job. In May 2021, the chancellor modified the temporary order, increasing Robert's child support payments to $1,105 per month, increasing his temporary alimony payments to $600 per month, and requiring him to provide health insurance for the children as soon as it became available through his new job.

¶6.     In November 2021, the parties consented to an irreconcilable differences divorce. They agreed that the chancellor would divide the marital estate and rule on Lisa's request for alimony. Following a trial, the chancellor divided the marital estate and awarded Lisa the marital home and $2,000 per month in periodic alimony.[1] Robert appealed. On appeal, he argues that the chancellor abused her discretion in selecting the line of demarcation for the division of the marital estate and in awarding alimony.

## ANALYSIS

### I.     Line of Demarcation

¶7.     "The law in Mississippi is that the date on which assets cease to be marital and become separate assets—what we refer to . . . as the point of demarcation—can be either the date of separation (at the earliest) or the date of divorce (at the latest)." *Collins v. Collins*, 112 So. 3d 428, 431-32 (¶9) (Miss. 2013). In addition, the chancellor may use a temporary order as the line of demarcation. *Id.* at 432 (¶11). "Ultimately, . . . the chancellor has the discretion to draw the line of demarcation." *Randolph v. Randolph*, 199 So. 3d 1282, 1285 (¶9) (Miss. Ct. App. 2016) (citing *Collins*, 112 So. 3d at 432 (¶10)).

¶8.     Here, the chancellor used the date of the original temporary order (December 2, 2020) as the line of demarcation. Robert argues that the use of that date was unfair to him because the value of the marital home increased between the temporary order and the trial held one year later. An appraiser testified that the value of the home increased from $335,000 on December 2, 2020, to $383,000 at the time of trial (November 30, 2021). Robert contends

---

[1] The final judgment made no provision for the parties' children because both were emancipated by the time of trial.

that the use of the date of the temporary order negatively impacted him in the division of the marital estate. In the final judgment, the chancellor awarded the marital home and mortgage to Lisa and found that the home had a net value of $105,000—$335,000 with a mortgage balance of $230,000. In total, the chancellor awarded Robert assets and debts with a net value of $164,960 and awarded Lisa assets and debts with a net value of $155,350. The chancellor then ordered Robert to pay Lisa $4,805 to "equalize" the property division. Robert reasons that if the chancellor had valued the marital home as of the date of trial, then Lisa would have been required to make an equalization payment to him. Robert argues that the use of the temporary order as the line of demarcation resulted in a "$48,000 windfall" to Lisa. He argues that this was unfair to him because his temporary alimony payments were used to pay the house note. However, Robert fails to show that the chancellor abused her discretion in setting the line of demarcation.

¶9. To begin with, Robert paid a total of only about $6,200 in temporary alimony during the entire period covered by the temporary orders.[2] Those temporary alimony payments were not just for the house note but were intended to assist Lisa with her "responsibility for payment of the ongoing house mortgage note, [her] vehicle note, [her] vehicle insurance, all house utilities, and the other expenses and items listed on [her] Rule 8.05 Financial Disclosure." In short, the temporary alimony payments were to assist Lisa with *all* of the

---

[2] Lisa's appellate brief asserts that "throughout the pendency of the divorce Robert made temporary alimony payments of $3,800." But in the previous sentence of her brief, Lisa acknowledged that Robert made one payment of $1,100 pursuant to the first temporary order, three payments of $100 pursuant to the second temporary order, and eight payments of $600 pursuant to the third temporary order. The sum of those payments is $6,200.

expenses she became responsible for when Robert abandoned the marital home. Lisa's expenses totaled $5,273 per month—or $63,276 for the entire year covered by the temporary orders.[3] Thus, Robert's temporary alimony payments covered *less than one-tenth* of Lisa's household expenses during the year covered by the temporary orders. Taking into account *all* the expenses Lisa inherited following Robert's departure from the marital home, the record simply does not support Robert's claim that the chancellor treated him unfairly.

¶10. Moreover, as noted above, the line of demarcation "can be . . . the date of separation (at the earliest) or the date of divorce (at the latest)." *Collins*, 112 So. 3d at 431-32 (¶9). Within that range, the chancellor has considerable discretion, and it is well settled that the chancellor may use a temporary order as the line of demarcation. *Id.* at 432 (¶11). In the present case, by the time the original temporary order was entered, the parties had been separated for a year. Moreover, even taking into account Robert's temporary alimony payments, Lisa was by that time responsible for the vast majority of her own expenses, including the mortgage. On these facts, we cannot say that the chancellor abused her discretion by selecting the date of the temporary order as the line of demarcation.

## II. Alimony

¶11. "Alimony awards are within the discretion of the chancellor" and will not be reversed unless the chancellor's findings are clearly erroneous or the chancellor abused her discretion or "applied an erroneous legal standard." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993). "Periodic alimony is awarded on the basis of need, generally in monthly

---

[3] The house note alone was $1,577 per month—or $18,924 for the year.

installments." *Stroh v. Stroh*, 221 So. 3d 399, 412 (¶44) (Miss. Ct. App. 2017). Permanent periodic "[a]limony should be considered only if, after the parties' assets are equitably divided, there are not sufficient assets to provide for both parties and one party is left with a deficit." *Id.* at (¶43) (quotation marks omitted). By this, we mean that the spouse requesting alimony "is left with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses." *Id.* (quotation marks omitted). "The purpose of permanent periodic alimony is to be a substitute for the marital-support obligation. The award of permanent periodic alimony arises from the duty of the financially independent spouse to support the financially dependent spouse." *Harris v. Harris*, 241 So. 3d 622, 625 (¶8) (Miss. 2018) (citation and quotation marks omitted). "[T]o the extent of his ability to pay," the financially independent spouse "is required to support [the financially dependent spouse] in a manner to which she has become accustomed" during the marriage.[4]

¶12. In ruling on a request for alimony, the chancellor should consider and make findings regarding certain factors, known as the "*Armstrong* factors." *Armstrong*, 618 So. 2d at 1280. Those factors are:

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

---

[4] *Descher v. Descher*, 304 So. 3d 620, 630 (¶26) (Miss. Ct. App. 2020) (emphasis omitted) (quoting *Castle v. Castle*, 266 So. 3d 1042, 1053 (¶43) (Miss. Ct. App. 2018)), *cert. granted*, 299 So. 3d 794 (Miss. 2020), *cert. dismissed*, No. 2018-CT-01338-COA (Miss. Oct. 29, 2020).

6

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Id.*

¶13. In this appeal, Robert argues that we should reverse the alimony award because it will be "financially impossible for [him] to pay" the award and because the chancellor made inadequate on-the-record findings regarding the *Armstrong* factors.[5]

¶14. At the time of trial, Robert was employed in Virginia as a regional manager for WillScot Mobile Mini at a base salary of $100,000 per year. He also anticipated that he would be paid an annual bonus, which he hoped would be at least $25,000, if not more. Robert earned additional income—he estimated $300 per month—as a private volleyball

---

[5] Robert also argues that we should reverse the alimony based on the general rule that if "it is necessary to reverse the chancery court's division of the marital estate, an accompanying award of alimony should also be reversed . . . ." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 711 (¶24) (Miss. 2014). However, because we find no abuse of discretion in the chancellor's division of the marital estate, this argument fails.

coach. On his Rule 8.05 financial statement,[6] Robert reported living expenses of $6,777.19 per month. However, he anticipated that he could buy a house for a lower monthly payment than the rent he was then paying, and he also hoped that his new health insurance would reduce his out-of-pocket medical expenses.[7] In addition, Robert's Rule 8.05 statement included $650 per month in expenses for the parties' daughter, who was employed and emancipated by the time of trial.

¶15. In contrast, at the time of trial, Lisa earned only $3,470 per month as a special education teacher with the DeSoto County School District. On her Rule 8.05 statement, she reported monthly deductions of $1,605 and monthly living expenses of $5,273.

¶16. In her bench ruling, the chancellor recited the *Armstrong* factors and made findings regarding those factors she deemed significant. She noted that the parties were approximately the same age,[8] that their children were both emancipated, that neither party had wastefully dissipated marital assets, and that the marriage was a long marriage of over twenty years. The chancellor then stated that based on the length of the marriage and the significant disparity in the parties' respective incomes and earning capacities, she found that Lisa was entitled to an award of periodic alimony in the amount of $2,000 per month.

¶17. We conclude that the chancellor's findings were not clearly erroneous, and the alimony award was not an abuse of discretion. Robert has a significantly greater income and

---

[6] UCCR 8.05.

[7] Robert testified that he paid approximately $3,800 per year for testosterone shots that his prior insurance would not cover.

[8] Lisa was fifty-one years old, and Robert was fifty-two years old.

earning capacity than Lisa, and he has the ability to pay the alimony ordered by the chancellor. While Robert may have to reduce his expenses and live within his means, we do not agree that it is "financially impossible" for him to pay the amount ordered. In contrast, without alimony Lisa would be left with a "deficit," i.e., her income would be insufficient to meet her reasonable living expenses. *Stroh*, 221 So. 3d at 412 (¶43). Accordingly, the chancellor's award of alimony was not an abuse of discretion.

¶18.     In addition, the chancellor's bench ruling sufficiently addressed the *Armstrong* factors. "[W]hile an on-the-record analysis of the factors set out in *Armstrong* is helpful for appellate review, the lack of that analysis in the record does not always warrant reversal, which will be required only in the case of manifest error." *Thompson v. Thompson*, 816 So. 2d 417, 420 (¶9) (Miss. Ct. App. 2002) (citing *Godwin v. Godwin*, 758 So. 2d 384, 387 (¶¶10-11) (Miss. 1999)). "When the chancellor fails to address all factors on-the-record, we are not required to remand the case, and should not, so long as all facts are available to us so as to allow an equitable determination to be made." *Roberson v. Roberson*, 949 So. 2d 866, 869 (¶6) (Miss. Ct. App. 2007); *accord, e.g., Voda v. Voda*, 731 So. 2d 1152, 1155 (¶11) (Miss. 1999). Here, although the chancellor did not separately analyze each factor, she discussed those factors that were the most significant in this case and adequately explained her reasoning on the record. The chancellor's findings are sufficient for us to determine that the award of alimony was not an abuse of discretion. Therefore, Robert's argument that the award must be reversed is without merit.

**CONCLUSION**

9

¶19. The chancellor did not abuse her discretion by using the temporary order as the line of demarcation or in her award of alimony.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**